Ohio ex rel. Atty.-Gen. v. Greenville Building, etc., Association.

The pupil having failed to comply with the rule, the teacher in excluding him from the school until he should comply with it or offer a reasonable excuse to the board for his non-compliance, acted under the authority of and with the consent of the board, and the action of the defendants in the premises having been, as they aver in their answer, in their judgment, for the best interests and welfare of the school, they are not liable in damages to the plaintiff therefor.

It follows, therefore, that the court of common pleas did not err in overruling the demurrer of the plaintiff to the answer of the defendants, and its judgment must be affirmed.

*Judgment affirmed.*

---

THE STATE OF OHIO EX REL. THE ATTORNEY-GENERAL v. THE GREENVILLE BUILDING AND SAVING ASSOCIATION.

1. A building and saving association, incorporated and organized under the act of May 5, 1868 (S. & S. 194), can not, by its action, authorize or permit a member to hold more than twenty shares of its stock in his own right.

2. Such corporation is not authorized to use its funds in making loans to members or depositors upon their promissory notes, at a rate greater than the legal rate of interest, in addition to the premium bid for the right of precedence, or in purchasing or discounting notes from such members or depositors at usurious rates of interest, or to use its funds in loaning the same to and in purchasing and discounting notes from persons other than its members or depositors upon any terms.

3. The only mode by which the premium on a loan can be fixed is by the bidding of the members or depositors for the right of precedence, and the board of directors is not authorized to fix a minimum premium and require the bids for such right of precedence to equal or exceed the premium thus fixed, in order to obtain a loan.

QUO WARRANTO.

The information is as follows :

John Little, Attorney-General of the State of Ohio, upon complaint to, and inquiry by him in that behalf made, now

comes and gives the court here at the December term thereof, 1873, to understand and be informed that the defendant, the Greenville Building and Saving Association, is, and since April —, 1869, has been an incorporated company of said state, formed and organized under the act of the general assembly thereof, entitled " an act to enable associations of persons to raise funds to be loaned among their members for building homesteads and for other purposes, and to become a body corporate ;" and that it has continuously hitherto since said date, within said state, to wit, at the county of Darke, offended against the laws of the state, misused its corporate authority, franchises, and privileges, and assumed franchises and privileges not granted to it, and especially in the following particulars and matters, to wit :

1. It has unlawfully allowed its members to hold more than twenty shares of stock each in their own right, and it still doth the like.

2. It has unlawfully used its funds in buying orders and bonds and in discounting notes and mortgage securities and commercial paper, in doing a general banking business, and in loaning its funds to persons other than its members and depositors, by discounting their notes, orders, and securities, and it still doth the like.

3. It has unlawfully loaned its funds to others than its members and depositors, and charged and received on such loans usurious rates of interest, and it still doth the like.

4. It has unlawfully refused and declined to loan its funds to its members for use in building homesteads, and for other purposes, and it still doth the like. All which things the defendant will continue to do unless prevented by the judgment of this court.

Wherefore the plaintiff prays the process and judgment of the court in the premises, and for all proper relief.

JOHN LITTLE, *Attorney-General.*

To which the respondent pleads :

1. That it is not true that it has unlawfully exceeded the powers and franchises conferred on it by law, nor is it true

that it has assumed or claims any right or privileges not so conferred.

2. That it is not true that it permits any of its members to hold more than twenty (20) shares of its stock, nor that it claims any right so to do.

3. That it is not true that it has exercised, or that it claims to exercise banking privileges, and it says that the loans made by it, and the bonds, etc., purchased have been merely temporary investments of surplus money, and that it has long since ceased to make any such loans, purchases, or discounts, or any such investments.

4. That it is not true that said defendant corporation has in the past, or does now, refuse or decline to loan its funds to its members; but, on the contrary, says that it is now and always has been ready to loan to its members, in accordance with the laws of the land and the rules and regulations adopted for its government by the members of said association.

Wherefore, defendant prays judgment; that said information be dismissed, and that it go hence, etc.

The conclusions of fact at which the court has arrived from the testimony appear in the opinion of the court.

*Charles Calkins,* with whom was *A. T. Bodle,* for the relator.

*Knox & Sater,* for defendant.

GILMORE, J.   The information herein is filed by the attorney-general on his own relation, in the name of the state, under section 9 of the attorney-general act (1 S. & C. 89).

It is not charged in terms that the defendant has done or committed acts which amount to a surrender or forfeiture of its corporate rights, privileges, and franchises; nor is a judgment of ouster from all its corporate rights, privileges, and franchises expressly demanded.   The general charge is, that the defendant has in the past, and does now, unlawfully assume and usurp certain franchises and privileges

not conferred upon it by law, and has and does exceed the powers conferred upon it by law.

Under this general charge there are several specifications of matters particularly complained of, and separate pleas have been filed to each specification. By these our in- quiries will be guided, and they will be considered and dis- posed of in their order.

The first specification is that the corporation (defendant) unlawfully allows certain of its members to hold in their own right, respectively, more than twenty shares of its stock. The plea to this specification is (1), a denial of the fact; and (2) a disclaimer of the right to allow to its mem- bers the privilege named.

The inhibition in this respect is found in the second pro- viso of the 2d section of the act under which the defend- ant is incorporated (S. & S. 194, 195), and is as follows : " No person shall hold more than twenty shares in any such as- sociation in his own right." This provision is nowhere ex- pressly or impliedly qualified in this or any other act re- lating to the subject.

This issue of fact is found for the state upon the testi- mony of the secretary of the association, who says from April, 1872, to March, 1875, Frank McWhinney was the owner in his own right of twenty-four shares of stock that stood in his own name on the books of the association. It appears that a portion of this stock was obtained by McWhinney in connection with the purchase of cer- tain real estate from another member of the associa- tion, who had taken a loan on the stock, and secured it by mortgage on the premises purchased, and that the stock was transferred to him by the mortgagor in performance of a part of the contract of purchase. It is assumed in argument that the fact of acquiring the additional stock in connection with the purchase of real estate, rendered the stock transaction unobjectionable, or at least excusable. This is a mistake. The corporation had nothing to do with the real estate contract between its members, and could not control it. It could, however, have controlled the

transfer of stock upon its books, and should have refused to allow any member to acquire and hold in his own right stock in excess of the number of shares limited by law.

It also further appears from the testimony of the secretary that the " I. O. O. Fellows," which means, as we understand it, a lodge of the Independent Order of Odd Fellows, is the owner of thirty shares of stock in its own right, upon which it has taken a loan for the full sum of $6,000, less the premium paid. This, as to the excess over twenty shares, is clearly illegal and unauthorized.

This issue of fact being found for the state, and it further appearing that in the latter instance the defendant is still offending, its disclaimer in this respect will not be heeded.

The second specification charges that the corporation has used and does now unlawfully use its moneys and funds (1) in buying orders and bonds and in discounting notes, mortgage securities, and commercial paper; (2) in doing a general banking business with its funds; and (3) that it had been and is now loaning its funds to persons other than its members and depositors, and discounting notes, orders, and securities for such other persons.

The plea to this specification is (1) a denial that it has exercised banking privileges; (2) a disclaimer of the right to do so; and (3) "that the loans made by it and the bonds, etc., purchased have been merely temporary investments of surplus money; and that it has long since ceased to make any such loans, purchases, or discounts, or any such investments."

This plea does not deny that the defendant had been unlawfully using its funds as charged in this specification, except the allegations as to its having been doing a general banking business; and it is evasive in this, that, while it says that it has " long since ceased to make any such loans, purchases, or discounts," it does not disclaim the right and authority to do so. The only issue, therefore, that is made on this specification, is upon the charge of doing a general banking business.· Upon the testimony this issue is found for the defendant.

It is shown that the great bulk of its money has been used in making loans to members upon their stock in the manner contemplated by the law-under which the association is organized; and the unauthorized acts mentioned below are not of such a character as to render it obnoxious to the charge of doing a general banking business.

The matters charged as unlawful, in the first and third subdivisions of this specification, may be considered and disposed of together. The testimony shows that the corporation, in the past, has been loaning its money to members, depositors, and persons other than members or depositors, upon their promissory notes, at the uniform rate of twelve per cent. interest per annum; and also in buying and discounting orders, bonds, and promissory notes, at the same usurious rates of interest, from members and depositors, and persons other than members or depositors; and also that it still is so dealing with its members and depositors; but not with persons other than members or depositors.

The first section of the law (S. & S. 194) declares the purpose of associations incorporated under it to be the "raising of money to be loaned among the *members* and *depositors* of such corporation, for use in buying lots or houses, or in building or repairing houses, or other purposes." The declared purposes here are plain and unmistakable; and this association, by the provisions of its constitution and by-laws, has, upon paper, kept itself strictly within the purposes declared, without attempting to bring into action any of the latent powers that may repose in the phrase, "or other purposes," with which the enumeration closes.

There is no countenance to be given to the idea that associations incorporated under the act above referred to can be used by capitalists as instrumentalities for obtaining more than the legal rate of interest on their money by depositing it with the association, and having it used in modes foreign to the declared purposes of their organization.

The first proviso of the second section of the act is not

an authority to take interest in excess of the legal rate, upon loans of money to members or depositors, where there is no competition for precedence in the loans—of which more will be said in considering the fourth specification. Nor is it an authority to purchase or discount commercial paper at usurious rates of interest; but only this—that the *dues, fines, and premiums* paid by members and depositors upon *loans taken on their stock, in addition to the legal rate of interest on such loans,* shall not make the loans so taken usurious. It is by these means only that the corporation can demand or receive anything in addition to the legal rate of interest upon its loans. Finding, as we do, that the matters charged in this specification, and not denied or disclaimed by the plea, are unauthorized, judgment for the state must follow.

The questions disposed of under the second specification also determine, in the same way, those sought to be raised by the third specification.

The gist of the charge in the fourth specification is that the corporation refuses and declines to loan its funds to the members thereof, for the purpose of building homesteads, etc., as provided by law, to their great damage.

The plea to this specification (1) denies the charge, and (2) "says that it is now, and always has been, ready to loan to its members, in accordance with the laws of the land, and the rules and regulations adopted for its government by the members of said association."

The secretary of the association, in answers to questions touching this issue, says: "On the twelfth of January, 1875, the board fixed the premium (on loans) at not less than twenty dollars per share. The order still stands on the minutes, not repealed." . . . "Frank McWhinney (who is shown to have been a member at the time) publicly bid off some stock, there being no competition, and the board afterward refused to let him have the loan on his bid, because it was a premium less than twenty dollars per share, to which he consented."

From this testimony, the exact character of the contro-

versy between the state and the corporation, arising under this specification, very plainly appears. The corporation refuses to let its members have loans upon their stock, unless the premium bid for the loan is at least twenty dollars per share.

In justification of this, the corporation, by its plea, appeals to the law and its constitution and by-laws.

The declared purposes of the law in creating these associations has been already shown, and need not be repeated. The enumeration of their powers is contained in the second section of the act (S. & S. 194), and is as follows: " Such corporation shall be authorized and empowered to levy, assess, and collect from its members such sums of money, by rates of stated dues, fines, interest on loans advanced, and premiums bid by members or depositors for the right of precedence in taking loans, as the corporation, by its by-laws, shall adopt."

All the means by which the corporation is authorized to raise revenue are here indicated; but our inquiry has reference only to the " premium " mentioned.

The right of members and depositors to contend for precedence in taking loans, and to have such right of precedence, as between themselves, determined by the amount of premium bid, is inferentially, but clearly, recognized; the mode of exercising the right is to be prescribed by the constitution and by-laws (which here mean the same thing) of the corporation; which has been done by article XI of the constitution of this association, which reads as follows:

"Sec. 1. Each share of stock shall entitle the holder to one loan not exceeding two hundred dollars, upon approved security, subject to the regulations of the board of directors.

" Sec. 2. Whenever there is money on hand to be loaned, the preference for one loan shall be sold to the member who offers to pay the most for it, or the highest premium for such preference; the purchaser may then elect to take as many more loans on the same terms as he has shares of

stock in the association, or until all the money then on hand is loaned."

These provisions seem to be in harmony with the spirit and declared purposes of the law.

The most valuable right that a member acquires by virtue of his membership is that of obtaining a loan of money with which to procure a home, with the privilege of repaying the same in weekly installments. This right, so distinctly given by the statute, and again asserted in first section above quoted, which is the work of all the members of the association, can not be destroyed or abridged by the board of directors, under the power of regulation given by the latter clause of the section. This power has reference to the prescribing of reasonable rules as to the time, manner, and place of exercising the right of demanding loans, and also to the prescribing of the kind of security that will be required, and the formalities to be observed in executing and tendering it for approval.

That this power of regulation does not authorize the board of directors to regulate the amount of premium to be paid by a member for a loan, or to refuse loans to members otherwise entitled to them, except upon the payment of minimum premiums, fixed by the directors, is made clear by the provisions of the second section of article 11 above quoted. This section imperatively provides that money on hand to be loaned shall be sold to the member (or depositor) who will pay the highest premium for the preference in taking the loan. This is the only mode known to the law by which the premium upon loans can be fixed or determined. It is a matter of voluntary action on the part of members and depositors in bidding for the precedence. Their own discretion determines the amount of premium they will pay for the precedence. When the competition is great the premiums bid may be above what prudence would dictate, but of this the bidder is the sole judge. When there is little or no competition, and a member bids a merely nominal premium for the precedence, and there is no higher bid by any other member or depositor, he is en-

titled to the loan at such nominal premium, and the board of directors can not refuse it if sufficient security is properly tendered.

The action of the corporation through its board of directors in fixing the premium upon loans at not less than twenty dollars per share, and refusing to grant loans unless the premium bid was equal to or in excess of this sum, was and is arbitrary and unauthorized; and it appearing that the corporation is still offending in this respect, the judgment must be for the state.

There is a good deal of testimony before us in the form of depositions, of which no notice can be taken, as it relates to matters other than those charged in the information, to which charges our inquiries are limited. 23 Ohio St. 445.

Judgment is entered on the several findings as follows:

1. That the defendant be ousted from the assumed right of allowing any member of the association from holding more than twenty shares of its stock in his own right.

2. That the defendant be ousted from the assumed right of using its funds in making loans to members or depositors upon their promissory notes, at rates greater than the legal rate of interest, in addition to the premium bid for the right of precedence, or in purchasing or discounting notes from such members or depositors at usurious rates of interest; and also from using its funds in loaning the same to or in purchasing and discounting notes from persons other than its members or depositors upon any terms.

3. That the defendant be ousted from the assumed right of fixing a minimum premium upon loans, and refusing to grant loans to members or depositors unless the premium bid equals or exceeds the amount thus fixed.

*Judgment accordingly.*