Okey, J.
Several questions of practical importance are involved in this case. They will be disposed of with as much brevity as the nature of the case will permit. But, in order that they may be understood, it will be necessary to extract from the voluminous record a statement of the facts.
On January 1, 1871, the defendant was organized and commenced business as a corporation, under the act of May 5, 1868, amended May 9, 1868 (65 Ohio L. 137,173 ; S. & S. 194,195), in relation to building and loan associations. The act, as amended, provides, among other things, as follows :
*260 “ Sec. 1. That any number of persons not less than five may associate together and become a corporation . . . for the purpose of raising moneys to be loaned among the members . . . for use in buying lots or houses, or in building or repairing houses, or other purposes.”
“ Sec. 2. Such corporation shall be authorized and empowered to levy, assess, and collect from its members such sums of money, by rates of stated dues, fines, interest on loans advanced, and premiums bid by members . . . for the right of precedence in taking loans, as the corporation by its by-laws shall adopt; also to acquire, hold, incumber, and convey all such real estate and personal property as may be legitimately pledged to it on such loans, or may otherwise be transferred to it in the due course of such business, provided that the dues, fines, and premiums so paid by members, . . . although paid in addition to the legal rate of interest on loans taken by them, shall not be construed to make the loans so taken usurious, and provided, also, that no person shall hold more than twenty shares in any such association in his own right.
“ Sec. 5. That so much of the earnings as may be necessary, not exceeding ten per cent, per annum, may be set apart to defray the current expenses of said association, and for the purchase of such real estate as may be necessary for the convenient transaction of its business, and the residue of said earnings shall be transferred to the credit of the share-holders ; and when said shares are fully paid, then to be paid ratably to the share-holders.” See Rev. Stats., §§ 3883-3836.
The corporation has made no loan to any member since December 1,1876, nor has it offered to make such loan by calling for bidders, as required by the by-laws. On April 1, 1877, P. Gr. Akers, a member of the corporation, applied to the directors for the purpose of obtaining a loan on four shares of stock; but the directors were not inclined to grant the request, and he accepted from them an offer of §104 per share, and transferred the stock to the association, *261 ■which is admitted to have been a good bargain on its behalf.
A by-law of the corporation, adopted September 1,1873, provides that the directors shall determine the lowest amount of premium that will be received on loans. The directors have constantly acted in pursuance of that bylaw, but have changed such minimum rate from time to time. Members sometimes bid below the premium so fixed, but the directors refuse to accept the bids.
At a meeting of the association, on June 20, 1877, a resolution was adopted, providing that as often as there is sufficient money in the treasury to divide the sum of ten dollars each to the uncanceled shares, such division shall be made, each share to be charged at the rate of ten per cent, per annum for such dividend. Five distributions were made pursuant to that resolution, amounting in the aggregate to $10,296 in cash. In addition, certain securities, hereinafter mentioned, were also distributed. But the construction given to the resolution was that the distribution should be confined to stockholders who had not taken out money on their shares.
From May 6, 1873, to March 8, 1877, the association procured at the First National Bank of Oberlin discount of twenty-two notes, amounting to $14,814.48, made by the officers of the association and others, some of them payable in thirty days, others in sixty days, and the others in ninety days. The rate of interest was ten per cent, per annum, which was usually deducted at the date of the note. Some of the notes were given in renewal of former loans. One of them, dated October 1, 1875, was given for thirty-five shares of stock in the corporation, purchased by the directors for the association. The other sums were borrowed by the corporation for the purpose of lending the same. The shares above mentioned, and others, were purchased by the company, so as to transfer them to persons not members, who desired to obtain loans of the association.
On July 1, 1877, eight members of the association held shares of stock in excess of the number to which they *262 were limited by statute. These shares number in the aggregate two hundred and ninety-two. Loans were made on all these shares except eighty-one. In the same yearl the association compromised with three of those members holding sixty-eight of such shares in excess.
From June 1, 1874, until January 1, 1878, the association compromised and settled with nine other members, whose shares were not in excess of the number to -which they were limited by statute. The number of these shares was eighty-eight.
With respect to such compromises, the following appears in the answer: “ Respondent says that in several instances it has, in consideration of certain of its stockholders canceling their stock, discharged the obligations which it held against such stockholders as collateral security for certain loans which they had previously made from respondent, and upon the further consideration that such members first pay to respondent the present worth of the money so borrowed by them, and for which they gave such obligations, mortgages, etc.”
Settlements were based on the assumed fact that the association -would run one hundred months from the beginning, that is, that when that period is reached it can pay $200 per share, according to the original intention. Repeated calculations showed that to he the probable duration of the company.
Where securities were taken in making settlements, they were distributed among the members in the same manner as the funds on hand, already mentioned, were distributed. The amount of securities so received and distributed was $4,843.8.
On this state of facts our conclusions are as follows:
1. That the association has abused its corporate powers in several particulars, admits of no doubt. It has refused to loan its funds to its members, and it has established such rules and regulations, and so conducted its business by dividing its funds and otherwise, as to prevent the loan of its funds to a member, under the system of competitive bid *263 ding contemplated in the statute, and provided for in the by-laws of the company. It has, indeed, loaned its funds, in many instances, to persons who were not members of the association. The illegality of such a course is clearly stated in State ex rel. v. Greenville Building and Saving Association, 29 Ohio St. 92.
Again, the association has been in the habit of borrowing money for the purpose of lending it. We do not deny that corporations possess the power to borrow money which may be needed in the transaction of their necessary business; but these transactions fall within no such principle. The money to be loaned by associations like this, if, as here, deposits are not received, can only be properly accumulated in the manner contemplated by the statute, that is by dues, fines, premiums, and interest; and the acts complained of, and fully proved by the testimony, can not be readily distinguished from the business of a banker. They are clearly illegal.
Equally illegal was the act of dividing the money and securities among certain stockholders. It was opposed to the principle upon which such associations are organized. It was, indeed, even if it had been done with perfect impartiality, a plain violation of the statute, which contemplates that no such division shall be made uutil “ said shares are fully paid.”
Finally, it was illegal for the association to traffic in shares of its own stock. We do not deny that a corporation has power to receive shares of its stock as security for a debt or other similar purpose; but here the association purchased its own shares of stock, in several instances, for the purpose of disposing of them to persons not intending to become members of the association, with a view of making such shares the basis of loans to such persons. The law will not uphold such transactions.
2. The association compromised with several of its members, and released them from further obligation to the corporation, as well on account of indebtedness for loans, as on subscription. We have examined the evidence, and we do not find there was any want of good faith in these *264 transactions. The interest of the stockholders as well as the public, seems to have been kept in view. Of course, without this such acts could not be upheld; but we are not able to find in the statute any inhibition of the power to make such compromises, and, on the fullest consideration, we unite in holding that the power exists.
3. Where a corporation has been guilty of acts which, by statute, are made a cause of forfeiture of its franchise to be a corporation, this court has no discretion to refuse such judgment. State ex rel. v. Penn. &. Canal Co., 23 Ohio St. 121. But, in other cases, we are vested with discretion to determine whether judgment of ouster of the franchise to be a corporation shall be rendered, or whether the corporation shall be ousted from the exercise of the powers illegally assumed. With some hesitation, a majority of the court have reached the conclusion that it will be for the interest of the stockholders, as well as the public, that we should render the latter instead of the former judgment. The evidence satisfies us that if the corporation is permitted to wind up its affairs, the work will be accomplished in a few months; but if the association should be ousted from its franchise to 'be a corporation, we would be required to appoint trustees under the act of 1878 (75 Ohio L. 817, § 22; Rev. Stats., § 6781), and this would occasion delay and involve increased expense. Accordingly, the corporation will be ousted from the exercise of the powers referred to in the first paragraph of the syllabus, and from the power of permitting any member to hold in his own right more than twenty shares of stock, but not from its franchise to be a corporation, nor from the exercise of the power referred to in the second paragraph of the syllabus.
Gilmore, C. J.
I dissent only as to the judgment entered. Such' flagrant and persistent violations of corporate powers and duties, as are shown in this case, in my opinion, call for and require an application of the severest penalties of the law. The judgment should oust the defendant from being a corporation.

Judgment of ouster as to specified powers.