# WHEELING.

McGANNON v. CENTRAL BUILDING ASSOCIATION No. 2 et al.

Submitted June 7, 1880.    Decided May 6, 1882.

1. The 27th section of chapter 54 of the Code of West Virginia, page 411, provides, that "every homestead and building association is authorized to levy, assess and collect from its members such sums of money by stated dues, fines, interest on loans advanced, and premiums bid by members for the right of precedence in taking loans, as the corporation by its laws shall provide." HELD :

Under such section a building association may by its constitution impose fines for the non-payment of the dues of members promptly, provided *first*, that but one fine is imposed for a failure to pay the dues falling due at one time; the association is not authorized however to impose a second fine on a member, because he permits his dues, which fall due at a particular time, to remain unpaid for any length of time; and provided *secondly*, that the fine imposed for the failure of a member to pay promptly his dues falling due at a particular time shall be reasonable; and the payment of an unreasonable fine for such failure will not be enforced.   (p. 737.)

2. A building association, the par value of whose shares is $150.00, and whose members by its constitution are required to pay twenty-five cents a week on each share as dues, by its constitution provides also for the imposition of a fine of ten cents a share for a failure to pay such dues promptly. HELD :

Such fine is reasonable and its payment may be enforced by the association.   (p. 741.)

3. A building association by its constitution provides, that the shares of stock in the association may be transferred, but when such transfer is made the party receiving the transfer shall pay to the association a transfer-fee of fifty cents for each share transferred.  HELD :

This transfer-fee may be enforced by the association.   (p. 737.)

Appeal from and *supersedeas* to a decree of the circuit court of the county of Ohio, rendered on the 1st day of March, 1879, in a cause in said court then pending, wherein James McGannon was plaintiff, and the Central Building Association No. 2 and W. J. W. Cowden were defendants, allowed upon the petition of said McGannon.

Hon. Thayer Melvin, judge of the first judicial circuit, rendered the decree appealed from.

GREEN, JUDGE, furnishes the following statement of the case :

On June 18, 1878, James McGannon filed his bill in the circuit court of Ohio county, in which he alleged, that the Central Building Association No. 2 was a corporation organized and doing business as a homestead and building association under the laws of the State of West Virginia and having its principal office in the city of Wheeling, and that the par value of its stock was $150.00 a share; that in August, 1874, the plaintiff became a member of the association and subscribed for twenty-five shares of its stock, and in September

succeeding he subscribed for fifteen additional shares; that he paid, when he subscribed for these shares, the dues, which had accrued on them, and thus put himself on the same footing as members, who had subscribed, when the association commenced issuing stock; that he had paid the dues on all of this stock including said accrued dues for two hundred and thirty-three weeks, as will appear from his pass-book filed, which pass-book contains also the constitution and by-laws of the association; that since June, 1877, he had made no payments of any kind to the association. He further says, that about the times, when he severally subscribed for this stock, he borrowed from the association two different sums and gave his notes according to the custom of said association for an aggregate of $6,000.00, the par value of his entire stock. This amount included not only the moneys actually received by him of the association but the premium or bonus bid for his preference in taking the loan offered. The book filed as an exhibit shows, that the sum actually received by him of the association was $3,848.25, and the premium paid by him or charged upon taking said notes for $6,000.00 was $2,151.75. The notes taken by the association aggregated $6,000.00 and were payable seven years after their date with interest from date payable quarterly in advance. Two deeds of trust were given to secure these two loans on certain real estate in Wheeling, which are filed with the bill as exhibits. They were given in trust to secure said notes and further to secure, when due, the prompt and full payment of each instalment of interest on each of said notes, the prompt payment of all dues, fines and other charges, with which said James McGannon may be assessed as a member of the association, and the repayment of any and all sums, which the said association may have to pay for taxes, insurance or other charges on the property conveyed. The deeds of trust provide, that it is agreed, that the trustee in the deeds might sell not only in default of the payment of the principal of these notes, when due, but upon default in the payment, when due, of any instalment of interest thereon, or upon the default in the payment of any dues, fines or other charges, with which the grantor may have been assessed as a member of the association, or upon his failure to keep the taxes paid up or to keep

the buildings on the property conveyed insured to such amount, as the association might require ; and on any of these failures or defaults the whole of the principal of the notes was to be considered as due, and the trustee might sell.  The trustee in these deeds of trust was W. J. W. Cowden.

The plaintiff in his bill claims, that all he really owes the association is his dues from June 9, 1877, and interest till the close of the association, to be calculated on the amount he borrowed, $3,848.25, and not on $6,000.00, the amount of his notes, this interest to commence from the time, when he ceased to pay the interest, and also a fine of ten cents on each share, that is, $4.00 in all, this fine to be inflicted but once, when he began to make default ; and he claims that there should be placed to his credit his portion of the profits of the association, and the excess of interest, which he paid, while he paid interest on his notes of $6,000.00, over the true amount of interest, which he ought to have paid, that is, interest on the $3,848.25.  And he charges, that this excess of interest charged and received by the association on this loan was usurious.  But he says the association claims much more, and among other unjust demands claims $252.00 as due for fines.  The bill states, that by the direction of the association the trustee in these deeds of trust had advertised for sale the properties conveyed to pay these unjust demands of the association.  The prayer of the bill is, that the association and said trustee may be made defendants and enjoined from proceeding further with the sale under the deeds of trust ; that an account may be taken of the amount actually due from the plaintiff to the association and of the amounts to become due, and that the plaintiff, when the same are ascertained, be allowed to pay them ; and then, that the injunction may be perpetuated, and the deeds of trust released ; and it further prays for general relief.  The bill was sworn to and the court awarded the injunction prayed for.

The Central Building Association No. 2 filed its answer, which admits really the facts stated in the bill and shown by the exhibits filed with the bill; but it regards the legal effect of the facts and the legal rights of the parties as substantially different from what they are claimed by the plaintiff in the bill, and which being alleged as facts in the bill are thus in

form denied in the answer. In this sense they deny, that the plaintiff was still the owner of his stock in the association, as claimed in the bill, and say, that he offered his stock for redemption to said association, which redeemed it and left him no pecuniary interest in it. The redemption of his stock was at the price which he offered to take for it, he expressing his willingness by being the highest bidder to discount from its par value more at the time than any other stockholder. The discount, which he thus agreed to make on the par value of his stock when redeemed, ranged from thirty-five to thirty-six and one half per cent. The notes were taken for the $6,000.00 payable in seven years after date as an additional security for sums otherwise becoming due from him to the association; and when these dues, interest and fines becoming due from him are paid, the association will make no claim on account of these notes; and they say, that he has been dealt with, as all the other members of the association have been and will be; and the premiums, interest and fines, of which he complains, have been paid by others, and he has received the benefit thereof, as it shortens the time the association will continue to exist, and as soon as it ceases to exist, the payment of this interest, dues and fines imposed on him will cease. The time, when it will cease, is of course uncertain; but it is estimated, that it will cease about June 28, 1879; but if the plaintiff's theory of his obligation and that of the other members of the association is correct, then the association will continue much longer, as it will continue, till it has received funds enough from its members to redeem all the shares of the stock held by all the members. He ceased to pay his interest on September 1, 1876, as his pass-book filed with the bill shows, and after that he ceased to pay any interest, and continued to pay his dues and fines till June 9, 1877, when he ceased to pay them, and has since paid nothing, as the pass-book shows. The cost of advertising the plaintiff's property for sale under the deeds of trust was $36.75, which ought to be paid by him and the injunction be dissolved, and the bill dismissed at the plaintiff's costs. This answer was sworn to by the secretary of the association; and its seal is also attached.

A motion to dissolve the injunction was made, and on

March 1, 1879, the cause being heard on this bill and answer, the injunction was dissolved, and the bill dismissed at the cost of the plaintiff, the decree providing, that the plaintiff do pay to the defendant its costs.

The following is a copy of such portion of the constitution of this building association as is necessary for the full understanding of this bill and answer and of the respective rights of the parties:

## " Article I.

" Sec. 1. This association shall be called The Central Building Association of Wheeling No. 2 ; and its object shall be the accumulation of a fund, by which the members shall be enabled to build or purchase houses and secure loans.

## " Article VIII.

### " *Dues, &c.,*

" Sec. 1. Every member shall pay on every Saturday twenty-five cents on each share held by him, having the right however to pay his dues in advance.

" Sec. 2. On and after the sixth regular meeting night after these articles shall go into effect, new members or members subscribing for additional shares, shall in addition to the weekly dues from the commencement of the association, pay such bonus per share as the directory shall judge to be sufficient to place new members or new shares upon the same footing as the original shares. The arrears for new shares shall be paid in full or in such installments and under such penalties as the directory shall determine.

## " Article X.

### " *General Rules.*

" Sec. 1. Every member who is to receive money from this association shall secure the same, together with his weekly dues, interest, &c., to the association by a good and sufficient deed of trust on real or lease-hold property. Further, he shall pay all ground-rent, taxes, premiums of insurance and other charges on the property, and produce the necessary receipt therefor to the solicitor. Said security must be satisfactory to the finance committee.

## " ARTICLE XI.

### " *Sale—Transfer.*

" Any member of this association may sell or transfer one or more of his shares to others. In such case the buyer and seller shall immediately notify the secretary thereof and the new member or buyer shall pay fifty cents on each share as transfer fee. Transfer of shares otherwise than is herein specified shall not be deemed valid.

## " ARTICLE XII.

### " *Value of Shares.*

" The par value of every share of this association shall be $150.00. Members offering their shares for redemption to the association shall bid for the same when offered in meeting by the president, and the member willing to pay the highest premium shall receive the award of the money, provided however, that in no case the premium shall be less than $30.00 per share.

## " ARTICLE XVII.

### " *Interest.*

" Any member to whom a loan is granted shall pay quarterly thereon interest at the rate of six per cent. per annum from the date of the award, payable in advance.

## "ARTICLE XVIII.

"When every member shall have received one hundred and fifty dollars on each and every undivided share held by him, less the premium of thirty dollars per share, and all debts and liabilities of the Association are paid, then this Association shall be dissolved, and not before.

## "ATICLE XXI.

### "*Fines.*

"Every member who fails to pay his weekly dues, interest, &c., shall be fined ten cents per week for every share held by him, and when the fines equal the money paid in on such share or shares, right and title to such share or shares shall be forfeited.

## "ATTICLE XXIII.

This Association is formed under and is subject to the corporation laws of the State of West Virginia, especially sec-

tions 25, 26, 27 and 28 of chapter 54 of the Code of West Virginia, which are hereby made part of this constitution.

*Henry M. Russell* for appellant cited the following authorities: 31 Md. 556; 41 Md. 409; 24 Conn. 147; Code, ch. 54, § 27; 25 Ohio St. 208; 31 Ohio St. 517; 22 Gratt. 826; *Id.* 233; 75 N. C. 292; 21 Ga. 592; 2 Colw. 418; 25 Barb. 263; 23 Gratt. 787; 14 N. J. Eq. 219; 38 Md. 115; 6 Bing. N. C. 180; 37 E. C. L. 335; 6 Hare, (27 E. L. & Eq.) 512; 8 E. L. & Eq. 57; 15 E. L. & Eq. 477; 29 N. J. L. 225; 25 Ohio St. 186; 6 Gratt. 40.

*W. P. Hubbard* for appellee cited the following authorities: 6 Bing. N. C. 180; 8 E. L. & Eq. 57; 15 E. L. & Eq. 477; 13 Gray 157; 43 N. H. 194; Tyler Us. pp. 95, 96, 98, 99, 172, 185, 188, ch. 15; 22 Gratt. 283; 23 Gratt. 187; 13 N. J. Eq. 427, 430; 14 N. J. Eq. 219, 222; 26 N. J. Eq. 351; 29 N. J. L. 225; 25 Barb. 263; 21 Ga. 592; 31 Eng. Chy. 102; 1 Abb. App. Dec. 347; L. R. 3 Eq. Cas. 762.

GREEN, JUDGE, announced the opinion of the Court:

In this case an injunction was awarded to a sale by a trustee advertised to be made on June 8, 1878, under two deeds of trust, one dated August 15, 1874, and the other September 15, 1874, whereby the appellant, James McGannon and his wife by the first of these deeds conveyed certain real estate to the trustee to secure several notes of James McGannon's to the Central Building Association No. 2. The notes secured by the first deed were for an aggregate amount of $3,750.00 payable seven years after date of notes and deed of trust, which were the same, with interest payable quarterly in advance and also the prompt payment of all dues, fines and other charges, with which said James McGannon should be assessed as a member of said association, and the repayment of all sums, which the said association may have to pay for taxes, insurance or other charges on the property conveyed; and it was added: " It is understood and agreed, that the trustee under this deed may sell not only upon default in the payment of the principal of any of said notes, when due, according to its tenor and effect, but upon default in the payment, when due, of any instalment of interest thereon, or upon default in the

payment by James McGannon of any dues, fines or other charges, with which he may be assessed as a member of said association, or upon his failure to keep the taxes on said property paid up, or to keep the buildings thereon insured to such amount as said association may require, and in such case the whole principal of said notes shall be considered due, and the trustee may sell, although no part of the principal of any of said notes may be due otherwise than under the provisions of this deed." The second of said deeds of trust was identical with the first in its trusts and provisions, except that it was to secure not only the notes described in the first deed of trust, but also in like manner another note for $2,250.00 given by James McGannon, payable to the Central Building Association No. 2 seven years after its date, September 15, 1874, with interest payable quarterly in advance.

The notes secured in the first deed of trust aggregating $3,750.00 were for the redemption at that time of twenty-five shares of stock by James McGannon, on which the premiums or bonus bid by him for his preference in taking the loans aggregated $1,363.25. The amount actually loaned and paid to James McGannon by the association was $2,386.75; but the association took his notes secured by the first deed of trust for the par value of his twenty-five shares, that is for $3,750.00. The notes secured in addition to the others in the second deed of trust were for $2,250.00 the par value of fifteen shares redeemed by him at that time. The premium or bonus bid by him at this redemption was $1,787.50 and the amount actually advanced and loaned to him then was $1,462.50. The counsel for the appellee, The Building Association, insists, that these transactions were the sale to the Building Association by James McGannon of his forty shares of stock for $3,849.25 in cash, which was the amount actually paid him; and that what the two deeds of trust really secure is the prompt payment of all the dues, fines and other charges, which might be assessed against him on these shares and to keep the taxes paid on the property conveyed and to keep the same insured, and further to pay promptly the interest on his notes given for the par value of these shares during the continuance of the Association; and that the notes themselves were not secured not being really due to the association; and that they were taken

merely as additional and collateral security being made payable at the time as estimated, when the association would close, at which time, if he performed these obligations, the amount, which would be coming on these forty shares at their par value, which they would then be worth, would be just $6,000.00 the principal of these notes.

Or if the transactions were to be regarded as loans, they must be regarded as loans amounting to $6,000.00, for which he bid for the preference in obtaining these loans $2,150.75, and this $6,000.00 was paid to him, and out of it he paid this $2,150.75 to the building association, who took his notes for $6,000.00 payable at the time when, it was estimated, the association would close, with interest to be paid quarterly in advance, and the shares redeemed were assigned as collateral security and the deeds of trust given to secure the payment promptly of the dues, fines, charges, &c. And when the association closed, they would owe him on these shares, if he fulfilled his obligations and also paid up the interest, just the amount of his notes, $6,000.00, which would just offset each other.

These views and claims were set up in the answer of the building association; and the circuit court adopted them in its decree of March 1, 1879, and dissolved the injunction, which had been awarded, and dismissed the bill at the plaintiff's costs. In this the court erred. These views of the transaction are essentially unsound. In *Pfeister* v. *The Wheeling Building Association, supra,* it is decided, that such a transaction is a loan made by the building association to the redeeming member; and in *Parker et als.* v. *United States Building and Loan Association et als., infra,* it is held, that it is a loan of the money actually paid to the redeeming member, in this case $3,849.25, the interest on it payable quarterly in advance; and that instead of the notes being taken simply as collateral security to secure the payment of the dues, fines and charges, which might be assessed against the redeeming member, and the taxes and insurance on the property, they are taken for the loan itself with interest from date payable quarterly in advance, and the notes being taken for $6,000.00 were usurious, and this can only be enforced to the extent of the money actually loaned (in this case $3,849.25) and simple

interest thereon at the rate of six per cent. per annum ; and that the shares redeemed remain in the hands of the building association not as their absolute property, but as collateral security for the payment of the amount of money so actually loaned (in this case $3,849.25) and the interest thereon, and also for the payment, when the association closes, of the bonus or premium bid (that is in this case $2,150.75) ; and that to make this collateral security of the shares available, the building association by the deeds of trust legitimately secured the prompt payment of the dues, fines and charges, which might be assessed against the redeeming member, and also the taxes and insurance on the property conveyed. Under these arrangements according to their legal effect the amount due under these deeds of trust at the close of the association will of course be the amount of all dues and all legitimate fines and charges including any taxes or insurance on the property conveyed, which the building association may have had to pay, and all the unpaid interest on the money actually loaned (in this case $3,849.25) charged at simple interest at six per cent. per annum. The amount loaned was so arranged when loaned, that it would be exactly satisfied including the premium bid, when the amount calculated as above was paid at the close of · the association by the redeeming member, who had borrowed money of the association.

There is in this case no claim, that the building association has paid any taxes or insurance on the property conveyed, and there is no dispute about the amount of interest, that the redeeming member or borrower has paid to the building association. As I understand, he paid interest in advance every three months on $6,000.00 up to September 1, 1876, that is, he paid all the interest on his notes aggregating $6,000.00 up to December 1, 1876. Of course, as he could be required to pay interest on only $3,849.25, the amount actually loaned to him, these payments of interest would really pay the interest on the amount he really borrowed ($3,849.25) to a period considerably later than December 1, 1876. I have not made the calculation accurately, but the payment of interest would have paid the actual interest due from him for more than a year longer, probably nearly to the beginning of the year 1878. There is no other charge of the building association against

the appellant, James McGannon, which is disputed in this case, except the charge of dues, fines and transfer-fee of $20.00 claimed in the answer to the building association.

It is claimed by the appellant's counsel, that this claim of $20.00 is illegitimate and ought not to be allowed. The appellant's counsel say: "The association seeks to apply $20.00 of the amount paid by appellant to the account of transfer fees; but the answer says, at the time he became the owner of them, he paid the dues accrued thereon and was upon the same footing as those, who had subscribed stock at the beginning of the association. The by-laws provide, that a member may sell or transfer one or more of his shares to others. The purchaser then becomes a new member and a transfer fee of 50 cents per share is to be paid by article XI of the constitution. There is no provision however for charging transfer fees against one, who paid the accrued dues and was upon the same footing as an original member. These transfer fees should consequently be credited to the appellant." It seems to me, that the position of the appellant's counsel is entirely untenable. As I understand the answer, when the appellant bought these shares, the persons, of whom he bought them, had failed to pay up all their dues and the appellant for them paid all the dues, which had accrued on these shares up to that time, and the answer then adds: "He was on the same footing as those, who had subscribed stock at the beginning of the association." It meant of course, when he paid his transfer fees he was on this footing. The building association was clearly entitled to these transfer fees expressly by its constitution; and it cannot be supposed, that the fact, that a new member paid up the accrued dues of the old member, whose shares he was about to purchase, can in any manner affect the right of the building association to demand the transfer fee of 50 cents a share of the new member. It seems to me, that the association had a right to demand and receive these transfer fees amounting for the forty shares transferred to $20.00.

It only remains to determine, whether the dues claimed by The Central Building Association No. 2 and the fines, they claim a right to inflict on the appellant for non-payment of

his dues promptly and for the non-payment of interest, since he redeemed his shares, are legitimate. So far as the claim of fines for the non-payment promptly of interest is concerned, this Court decided in the case of *John E. Parker* v. *The United States Building & Land Association, infra,* that under our statute a building association has no right to impose any such fine. The reasons, which led us to this conclusion, are fully set forth in the opinion in that case and need not be repeated. As to the right of the building association to demand the payment of the dues imposed on the appellant as a member of the association there is and can be no controversy. The dues claimed to be due by the association are only such, as they have a right to demand, that is, 25 cents per week on each share as expressly provided in this constitution. The law authorizes them in their constitution to fix these dues at such an amount, as they may choose, and to make them payable at such time, as they please. But it is claimed in the bill, that he owned forty shares of stock and paid his dues regularly thereon, 25 cents on each share weekly, as required by the constitution, up to and including June 9, 1877; but on the 16th day of June, 1877, he failed to pay his dues, and thereafter paid no dues each week, when $10.00 of new dues became payable till the institution of this suit (an subsequently so far as the record shows he has paid no dues.) The bill claims, that on this state of facts he was liable to be fined on June 16, 1877, when he first made default for the non-payment of his dues, 10 cents on each share or $4.00 in all, and could legally be fined but this once, no matter what were his subsequent defaults.

This view is based on an entire misapprehension of the decision in Maryland of *Shannon* v. *The Howard Mutual Building Association of Baltimore,* 36 Md. 366, and *The Monumental Permanent Building and Loan Society of Baltimore* v. *John C. Lewis,* 38 Md. 445, all that was decided by these cases applicable to the case before us was, that they could not legally fine the appellant in this case $4.00 for non-payment of his dues on forty shares on the 16th day of June, 1877; and the next week fine him $4.00 more for his continued failure to pay the same dues, which fell due on June 16, 1877, and an additional fine of $4.00 for the failure to pay his dues, that fell due on the

23d day of June, 1877, making a total fine of $8.00 on June 23d, 1877 ; and the next week fine him $4.00 for his con-tinued failure to pay his dues, which fell due on June 16th, $4.00 for his continued failure to pay his dues, which fell due on the 23d of June, 1877, and $4.00 more for his failure to pay his dues falling due on the 30th day of June, 1877, making in all a fine of $12.00 for his third week's default ; and so on, the fine increasing each week in arithmetical progression. This was the meaning of their saying, that only one fine was authorized for the non-payment of each instalment of the weekly dues.

Under the rule of inflicting fines claimed by the association in the first of these Maryland cases for a default in paying dues amounting to $150.00 for a moderate time the Building Association claimed fines amounting to over $400.  This was condemned by the court, who according to the rules laid down by the court allowed what, when applied to the case before us, would be a fine for the non-payment of dues by the ap-pellant of only $4.00 per week.  These cases were decided on the construction of the articles on the subject in the constitu-tions of these Building Associations.  But I am satisfied, that the decisions must have been the same, no matter how clearly their constitution had authorized fines in this mode.  A fine is inflicted for a default in the performance of a duty by a member, and the general authority given by the statute to cor-porations to inflict fines must be interpreted as an authority to inflict a fine for any specific default of duty and not to inflict two or a dozen fines for a single default in failing to pay dues, which fell due at one time, because it continued some time.  This conclusion legitimately follows from what the Court decided in this first Maryland case, *Shannon* v. *The Howard Mutual Building Association* 30 Md. 383.  They de-cided then, that when interest and dues fell due at the same time, and the member failed to pay either, he could be fined but once, as the two amounts constitute but one sum due at that time, and his failure to pay it was one default, for which he could be fined but once.

In the case of *Hagerman et al.* v. *Ohio Building & Savings Institution et al.*, 25 Ohio St. 201, 202, 203 in construing their law of February 21, 1867, a copy of which may be

found in the opinion of this Court in *John Pfeister* v. *The Wheeling Building Association, supra,* and which is in almost the identical language of our statute, the court say, after reciting the statute:

"By the terms of this statute fines may be assessed and collected only from members of the association ; but there is no limit to the amount or occasion, except as prescribed by the by-laws adopted by the corporation, and there is no express limitation on the power of the corporation to adopt by-laws. It is to be regretted, that the Legislature was not more specific in making the grant of power thus intended to be conferred. It is no wonder from the general terms of the grant, that courts of the State have been at sea in their efforts to ascertain and define this power. That there are limits however, beyond which the corporation by its by-laws cannot go, is undisputed. 1. The amount of the fine must be reasonable. 2. It can be imposed by way of punishment for some delinquency in the performance of a duty, which the member may owe to the corporation by reason of his membership. 3. It is unreasonable, and therefore we assume, that the Legislature did not intend, that more than one fine should be imposed for the same delinquency. The application of these tests cannot be restricted, on the ground that the fines imposed under such by-laws must be regarded as conventional between the corporation and the member. The by-laws are adopted by a majority ; and the Legislature did not intend, that the assent of the minortiy or of any one member of the association to the imposition of fines should on all cases be conclusively presumed. The true intent was, that the power to assess unreasonable fines or to assess for any other cause than the delinquency of the corporator, or to assess twice for the same offence should not exist in the corporation.

" If these principles be applied to these associations, we think they may legitimately assess a fine against a member for a delinquency in the payment of stated dues. The prompt payment of these dues is a duty, which each member owes as a corporator and in common with all the members. The success of the enterprise, in a large degree, depends upon the prompt performance of this duty. Hence a reasonable fine for a default in making payment thereof, is within the power

intended to be conferred. But a second fine for the non-payment of the same stated dues is a second punishment for the same offence. It is not a sufficient answer to the last proposition, that the non-payment of the same stated dues at a subsequent day is a new offence. The obligation to pay when the due first accrued was complete. No *new* obligation to pay it in the future is undertaken by the defaulting member; but the obligation or duty to pay it, at maturity, continues after default, until payment be made."

With these views I heartily concur; and I may add, that upon general principles a court of equity enforces such fines, only when they are reasonable, because they do not amount to a forfeiture, which a court of equity will not enforce. A reasonable fine is in the nature of liquidated damages agreed to be paid for the non-performance of a promise; and when they are not unreasonable or disproportioned to the exigency of the case, a court of equity will award their payment, more especially when incidentally involved in a matter confided to its peculiar jurisdiction and control. See *Shannon* v. *The Howard Mutual Building Association of Baltimore,* 36 Md. 493 and 2 Story's Eq. Juris., sec. 1318. Is the fine then of ten cents a share for a failure to pay dues in a building association, the par value of a share in which is $150.00 and the dues twenty-five cents a week, unreasonable? It seems to me, that it is not. Such an association located in Wheeling according to the estimates made by the association itself as well as the appellant in this case would continue about seven years from its organization to its close, if it demanded such fines and interest, as this association claims a right to demand; but if it demanded only such fines and interest, as it has a legal right to demand as explained above, such association might continue its existence for seven years and a half, that is, for 390 weeks. Suppose now a member joined such an association and failed from the beginning to pay up any of his dues and the fine inflicted on him for his default was ten cents a week on each share. If he took but one share, his account at the end of the 390 weeks with the association would stand thus: he would owe dues for the 390 weeks at twenty-five cents per week or in all $97.50 for dues; he would owe fines for his 390 defaults in paying his dues $39.00

in all for fines, and his total indebtedness would be $136.50. On the other hand they would according to the provision of article 12 of the constitution of this company owe him $150.00 less $30.00 or $120.00. If the provision at the close of this article, "that in no case the premium shall be less than $30.00 per share," should be regarded as valid, and such as the association had a right to insert, so that the utmost loss, which he could sustain by fines continuing for seven and a half years, would be only $16.50. And it is exceedingly doubtful whether the court would not hold such a provision, as is contained in the clause of this 12th article of the constitution invalid. It has been so expressly held in *Ohio ex rel. Attorney General* v. *Greenville Building Association*, 29 Ohio St. 92, and if so, the association would have to pay each member at its close $150.00 a share. In that case the defaulting member, who had never paid a cent of dues, though he had been fined ten cents a week during the whole time the association lasted, would on his one share after paying all his fines and all his dues still have left $13.50.

This, it seems to me, shows clearly, that the fine of ten cents on each share in the Central Building Association of Wheeling No. 2, cannot be regarded as unreasonable. It is no more than sufficient in that association to make it the interest of each member to perform his duty by paying his dues promptly. If the fine had been much less the association would have thereby held out an inducement to its members not to pay their dues promptly or even to omit the payment of them entirely. The association claims of the appellant only $4.00 a week for his delinquency in paying his dues on forty shares of stock. These fines were imposed, so far as they were inflicted for the non-payment of dues, according to their constitution; and they were reasonable fines, which they have a legal right to enforce. They ought to be regarded not in the nature of a forfeiture, but as liquidated damages resulting to the association by reason of a member's delinquency in performing his duty. Were these damages agreed upon by the parties unreasonable or unjust? They were only sufficient to prevent the association from suffering actual loss.

Still a portion of the fines, which the association claims in this case, cannot according to the principles, which we have

laid down, be allowed. The record shows, that the appellant, James McGannon, paid all his dues up promptly to June 9, 1877, including that day, his first default in the payment of his dues promptly being on June 16, 1877. He was then .for this default liable to a fine of $4.00, and as he never afterwards paid any dues, so far as the record at present shows, he was liable to a like fine of $4.00 every week till the close of the association. But as I understand the answer of the building association, they claim these fines at the rate of $4.00 per week from a date some nine and a half months before his first default in paying his dues, that is, from September 2, 1876, when he made his last payment of interest. We have seen, that he could not be legally fined for not paying this interest; and his fines ought not to have commenced, till he failed to pay his weekly dues promptly.

It is claimed by the appellant, that as the building association has no right to impose a fine for the non-payment of interest, and as their constitution, article twenty one, inflicts a fine for the non-payment of weekly dues, interest, &c., none of the fines ought to be regarded as legitimately claimed. There is nothing in this objection ; for the fines being imposed for the non-payment of dues legitimately, the fact, that the association sought in this mode to secure the prompt payment of the interest too, can not affect their right to collect these fines, where there was a sufficient legal cause for their imposition. This sufficient legal cause existed after June 16, 1877, including that day, when he failed to pay his dues. The fines inflicted under the constitution of the association before that day for the non-payment of dues and interest, he being in default for interest only, cannot however be allowed, there being no sufficient cause for the fines being levied. In this case there was no allegation in the bill, that any part of the money loaned to the plaintiff was used for any other purpose than the legitimate purposes named in the statute, and it must therefore be conclusively presumed, that the money loaned was used legitimately, and this cannot now be questioned or disputed in the case.

A question has been raised, as to whether it was either the right or duty of the association to demand of the trustee under these deeds of trust to sell before the close of the associa-

tion, and whether they could or could not regard the whole debt as due, before the association closed, and if so, whether there was not an absolute necessity to come into a court of equity to ascertain the real amount due, or whether the sale could be properly made by the trustee under these deeds of trust for the dues, interest and fines actually due at the time of the sale. On these points *White* v. *Building Association,* 22 Gratt, 248-250, and *Smith* v. *Flint,* 6 Gratt. 40, are referred to; but I deem it unnecessary to consider or determine any of these questions, as this association has long since terminated, and the circuit court, to whom this case must be remanded, cannot now be embarassed by any such questions.

I am of opinion therefore, that the decree of the circuit court of Ohio county of March 1, 1879, must be reversed, set aside and annulled, and the appellant recover of the appellee his costs incurred in this Court, and that this cause should be remanded to the circuit court of Ohio county with instructions to ascertain the true balance due on the deeds of trust mentioned in the bill upon the principles above laid down, and when ascertained, if necessary, to enforce its payment by a sale of the property conveyed by these deeds of trust respectively, and to further proceed with said cause according to the principles laid down in this opinion and further according to the rules and principles governing courts of equity.

Judges Johnson and Haymond Concurred.

Decree Reversed. Cause Remanded.

---

# WHEELING.

Submitted June 7, 1880. Decided May 6, 1882.