Adams, J.
This cause has been submitted to the court on an amended petition, an answer and evidence.
The question between the parties is almost altogether *52 one of law, and probably the only isBue of fact is whether or not the plaintiff has made a tender to the defendant company of the amount the plaintiff claimed to be due from him to the loan association, and whether jghe has kept that tender good by deposit with the clerk of the court.
In the petition Mykrantz seeks to have cancelled two notes and two mortgages. As far as these two notes are concerned —and I will call these documents notes for the sake of convenience — executed and delivered by Mykrantz to the building and loan company, he claims that he has tendered and paid to the clerk of the court the balance remaining due on his note and mortgage to the building and loan association, and that by reason of that tender, and keeping that tender good by payment into the'court, he is entitled to have his mortgage cancelled.
The building and loan company by its answer, make certain denials as to what was said and done, as to interest and in issuing circulars and letters that the interest would only be 6 per cent., and deny that this tender was made and kept good.
We find as a matter of fact that the plaintiff Mykrantz did tender to the building and Joan association and has paid to the clerk of the court the amount alleged and the amount testified to by the clerk of the court, which was the amount due at that time to the building and loan association for the cancellation, according to plaintiff’s claim.
That brings us to the question between the parties, and that question grows out of the contract between the parties, which reads as follows:
“$800 Columbus, Ohio, July 20th, 1896,
“Received of the Globe Building and Loan Association, of Columbus, Ohio, eight hundred dollars, as a loan on eight shares of stock, No.---owned by me in said association.
“I herein agree to paygjto said association monthly, not less than twelve dollars and eighty cents.
*53 “First. To the payment of any fir.es or other assessments made against me in pursuance of the by-Jaws of said association.
“Second. To the payment of the interest and premium, due on said loan, amounting to eight dollars, per month.
“Third. The balance of said payments shall be credited as dues on said stock. Said payments shall be continued until the dues so credited on said stock, together with the interest accumulations as per the tables adopted in the bylaws of said association, shall equal the amount loaned.
“Should I fail for three months to pay said payments, then the whole amount of said loan shall at once become due and payable.
“C. W. Mykrantz,
“Emma L. Mykrantz.”
. From the by-laws it will appear that the dues on this number of shares of stock will amount to exactly $4.80, so that it leaves of the $12.80 per month $8.00 per month to be paid as interest and premium on the bond.
■ It is provided by the by-laws of the association, which were in evidence, that the premium should be 50cts. per month,on each one hundred dollars, which would make $4.00 per m inth premium and $4.00 per month interest. In other words,the borrower obligates himself to pay 6 per C3nt. per annum on the loan, payable monthly as interest, and 6 per cent per annum,payable monthly as premium,or 6 percent, as interest and 6 per cent, premium. The question of law, the question that has been argued, is, first, whether or not that sort of arrangement, that sort of a contract is usurious; and, second, whether or not section 3836-3 of the Revised Statutes is constitutional or not.
We have been cited to two Ohio decisions under this section, 29th Ohio St., pages 92 to 98, and we read from page 97.
“The matters charged as unlawful, in the first and third subdivisions of this specification, may be considered and disposed of together. The testimony shows that the cor *54 poration, in the past, has been loaning its money to members, depositors, and persons other than members or depositors, upon their promissory notes, at the uniform rate of twelve per cent, interest per annum; and also'' in buying and discounting orders, bonds, and promissory ' notes, at the same usurious rates of interest,, from members and depositors, and persons other than members or' depositors; and also that it still is so dealing with its members and depositors; but not with persons other than members or depositors.
“The first section of the law (S. & S., 194) declares the purpose cf associations incorporated under it ■ to be the ‘raising of money to be loaned among the members and depositors of such corporation, for use in buying lots or houses, or in building or repairing houses, or other purposes.’ The declared purposes here are plain and unmistakable; and this association, by the provisions of its constitution and by-laws, has, upon paper, kept itself strictly within the purposes declared without attempting to bring into action any of the latent powers that may repose in the phrase ‘or other purposes’ with which the enumeration closes.
“There is no countenance to be given to the idea that associations incorporated under the act above referred to can be used by capitalists as instrumentalities for obtaining more than the legal rate of interest on their money by depositing it with the association, and having it used in modes foreign to the declared purposés of their organization.’’
We are also cited to the case of Bates v. People’s Savings & Loan Ass’n, 42 Ohio St., 655, and we read the first three paragraphs of syllabus on page 656.
“1. The act of May 9, 1868, amending the act of May 5, 1868, commonly called the Building and Loan Association Act (S. & S., 194), which authorizes building and loan associations to receive deposits of money was not an act granting “banking powers’’ within the meaning of section 7, of article 13, of the constitution. Dearborn v. Northwestern Savings Bank, ante, approved and followed.
“2. A person who-applies to a building and loan association for a loan of money, and deposits therewith a sum *55 of money, however small, for the purpose of making himself eligible as a borrower, and thereby receives a loan, is estopped, when sued for the money by the association,frcm denying that he was, in fact, a depositor of the association.
“3. Compensation for the use of money advanced by a building and loan association to a member of depositor, in excess of the rate of interest allowed by law, and not derived from dues, finés or premiums paid by the borrower for the right of precedence in taking said loan, is usurious. The premium which shall not be construed to make the loan usurious, under section 2, of the act of May 9, 1868, is a premium bid by a member or depositor for the right of precedence in taking a loan, at a competitive sale of such right.”
I may say right here in connection with the three paragraphs of this syllabus, that there is nothing in this case, either in evidence or otherwise, to show that Mykrantz or any other depositor, or any member of this company, ever bid a premium for a loan from the defendant company, •and that this premium is simply fixed by action of the directors, in establishing the by-law, that it shall be 50 cts. on the $100.00 per month, and that in the contract it is simply •shown that there shall be paid $8.00 per month as premium and interest, and it can be figured out from the constitution .and by laws as we have already indicated, i. e., 6 per cent, for interest and 6 per cent, for premium,
Again, on page 672 in this same case, the court say:
“The provision of the statute is, that such corporation may collect from its members stated ‘dues, fines, interest on loans advanced, and premiums bid by members and depositors for the right of precedence in taking loans,’ etc., ‘provided that the dues, fines and premiums so paid by members or depositors of such .corporation, although paid in addition to the legal rate of interest on loans taken by them, shall not be construed to make the loans so taken usurious.” The premium named in the note is unlike the premium named in the statute. It was not measured or ascertained by competitive bidding among the members and *56 depositors, as we understand the statute to require. It was,, in fact, a part of the price named by the lender to be paid by the borrower for the use of the mony loaned. The assent of the borrower to pay the price required, did not make-him a bidder within the meaning of this statute. Calling-the excess above the highest legal rate a premium did not change the nature of the transaction. It -was usurious.”
Under the rulings of the supreme court, this applies* directly to this case at the bar. There was no competitive-bidding, and the building and loan association charge this-plaintiff with the 12 per cent, per annum, payable monthly on this loan. Now,it is claimed under this statute, section-3836-3,that it is not usurious because the building and loan-association have chosen to call 6 per cent, “premium” rather than “interest”, and that brings us to the question* whether or not that character of legislation is constitutional or not. It is said that that section of the statute is in violation of section 26, article 2, of the constitution, which requires that all laws of a genearl nature shall be uniform in operation throughout the state. It is also said that this is in violation of article 13 of the constitution, that prohibits special acts granting corporate powers. As we view it, this act does not violate either of these provisions-of the constitution. This law, whatever else may be said about it, is a law of a general nature, and is uniform throughout the state. It applies to all building and loan associations in whatever corner of the state they may be found. It is not granting, as we view it, a special or corporate power by special act of legislation.
In the case of Palmer v. Tingle,found in the 55th Ohio St., beginning with page 423, the supreme court of Ohio hold that a part of the Mechanic’s lien law of Ohio was unconstitutional because it violated certain provisions of the constitution of the state, found in the “Bill of Rights”. On page 440, in the opinion of Judge Burket,-after citing the preamble of the constitution, “We, the people of the state *57 of Ohio, grateful to Almighty God for our freedom, to secure its blessings, and promote our common welfare, do es,tablish this constitution,” says, “to make this more-emphatic, the first section of the bill of rights provides that, ■ ‘‘All men are by nature free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property and seeking and obtaining happiness and safety”. In the second section it is provided that, ‘‘All political power is inherent in the people. Government is instituted for their equal protection and benefit.”
See also 53 Ohio St,, 12-23; 53 Ohio St,, 315; 58 Ohio-St., 610.
If government is instituted for the protection of the people, then all Jaw which gives special privileges to a certain class of people and to a certain class of corporations is not for the equal protection and benefit of the people. See how it applies to this case. It has been decided in the 51st Ohio St., page 234, that national banks can charge 8 percent. in advance and it is not usurious, although it is held in the 40th Ohio St. 260,that when the individual charges and receives 8 per cent.in advance,it is usurious; and if section 3836-3 is constitutional, the building and loan association can charge any rate of interest that they can get their needy members or depositors to pay. There is no limit placed on their power of exacting interest. They may go as far as the Building and Loan Association in the case reported in 7 Am. E. R. & Oorp. Reports 115, which took a note for $1000 witb'8 per cent, interest for an actual loan of $600r the other $400 being the so called premium. No other corporation within the state, except it be a national bank, which under the decision given may receive 8 per cent, in advance —mo other corporation in the state — no other individual in the state could charge more than 8 per cent, for loans and not have his claim cut down to the 6 per cent. rate. He would *58 have the loan declared usurious. It seems to' us very clear that legislation of this kind is class legislation of the most vicious character, and that-if theconotitution of the slate of Ohio is worth anything at all, it must and does prohibit that kind of legislation, and we hold from the facts in this -case that usury was exacted from this man, and we hold that "the company is not protected in exacting usury by the provisions of sections 3836-3, to which -we have referred, "‘¡beaause it is a violation of sections 1 and 2 of the Bill of Sights. There will be a dcreee for the plaintiff.
John W. Mykrantz, H. A. Mykrantz, for Plaintiff.
M. L. McCray, D. B. Ulrey, for Defendant,