THE LICKING COUNTY SAVING, LOAN, AND BUILDING ASSOCIATION *v.* LEWIS C. BEBOUT'S ADM'R AND OTHERS.

Where a building association organized under the acts of May 5 and 9, 1868 (S. & S. 194, 195), provides by its by-laws that in case a shareholder who has received a loan shall die, "his or her heirs or legal representatives may return the same to the association," and receive from the association the value of the stock of the decedent as the same was assessed at the annual meeting of the association immediately preceding his decease, "or continue to pay the interest and monthly dues, and become in all respects a member of the association until the same shall terminate:" *Held*, that if the heirs or legal representatives of the deceased shareholder elect to return the loan, the amount to be returned is the money actually received plus the premium bid for precedence.

MOTION for leave to file petition in error to reverse the judgment of the District Court of Licking county.

The Licking County Loan and Building Association was incorporated under the acts of May 5 and 9, 1868 (S. & S. 194, 195), and in the same year organized and adopted by-laws for its government, in pursuance of the authority given in the second section of the act, which seem to be such as the association was authorized to adopt and enforce for the regulation of its transactions with its members in carrying out the object of its creation.

In September, 1868, Lewis C. Bebout became a member of the association by subscribing for four shares of stock, of two hundred dollars each, and took an advance loan upon his stock for the full amount of eight hundred dollars, for which sum he executed an instrument in favor of the association, agreeing to repay the amount in dues, interest, etc., in pursuance of the requirements of the by-laws, and secured the performance of his contract by mortgage on real estate.

The amount of premium bid by him for precedence in taking the loan was in the aggregate $390, so that he received in cash only $410, which together equal the aggre-

gate amount of his four shares of stock. He continued to pay the monthly instalments of dues and interest until his death, which occurred in September, 1872; and there having been no administrator of his estate appointed till November 14, 1873, the widow and heirs shortly after the death of Bebout elected to return the $410, and tendered the amount, less amounts previously paid in dues and interest, but the association refused to accept this proposition. To prevent fines and forfeiture they continued to pay the dues and interest upon the loan till the administrator was appointed, who then promptly commenced this proceeding to compel the association to cancel the mortgage, offering to surrender the four shares of stock to the association. The association answered, setting up the mortgage for eight hundred dollars, claiming that this was the amount of the loan, and asking a decree for the balance due, etc.

The court of common pleas rendered a decree in favor of the plaintiffs, finding that the mortgage had been fully paid, and ordering it to be canceled. On the trial in the district court on appeal, a bill of exceptions was taken setting out all the testimony, and also an admission made by the defendant on the trial, which is as follows: "It was admitted by the defendant, that if the court, on the hearing of the case, should be of the opinion, under all the circumstances of the case, that the plaintiff was entitled to redeem the mortgage upon the return of $410 as the 'loan,' under the by-law in the petition set forth, then there had been paid by said Lewis C. Bebout and his representatives to said defendant, as dues upon the stock, and interest upon the loan, an amount of money sufficient, so that, upon an account properly taken in equity of the amount so paid and the amount the plaintiff would be entitled to receive on said stock under said by-law, the plaintiff would be entitled to decree for the cancellation of said mortgage on the surrender of the stock, without any further payment thereon."

The district court found that the "loan" was the $410

received in cash, and, on the admission of the defendant, found that this sum had been paid, and decreed accordingly.

By this proceeding, the defendant below (plaintiff in error) seeks to obtain a reversal of the decree of the district court. The error insisted upon is that the court erred in holding that the loan consisted of the cash received, exclusive of the premium bid for precedence in taking it.

*H. D. Sprague* and *Geo. W. Ingraham*, for the motion.
*Gibson Atherton*, contra.

GILMORE, J.   If the *loan* in this case consisted of the cash received on taking it, which was $410, exclusive of the premium bid for precedence, which was $390, the decree of the district court was correct, and must be affirmed.   If, on the other hand, the *loan* consisted of the aggregate of these sums, *i. e.*, $800, the decree was erroneous, and must be reversed.

The object of these associations, and the powers with which they are clothed on becoming incorporated, are expressed in very general terms in the statute authorizing their incorporation.   Each association, when incorporated, is left at liberty to adopt such a scheme or plan for working out and accomplishing its object as the members of the association may by its by-laws provide, and so long as these do not violate any of the provisions of the statute, nor transcend the powers granted, they will be binding and obligatory upon and between the members and the association.   The by-laws of this association are brought upon the record by the bill of exceptions, and no question is raised as to their validity.   This case is, therefore, to be determined by the provisions of these by-laws.

One of the declared purposes of the association, as expressed in the first section of the by-laws, is to enable members " to receive the *amount of their shares* in advance upon furnishing good mortgage security."   The second section

provides, in substance, "that all moneys of the association, after payment of expenses, shall be applied in loans or advances to such members as shall require to borrow the *amount of their respective shares;* in paying off the shares of members withdrawing from the association, and in the payment, at the expiration of the association, the full value of such shares therein as may remain therein unadvanced."

The seventh section provides that " as soon as each and every shareholder for each and every share of stock by him, her, or them held shall have received the sum of two hundred dollars, *or its equivalent,* this association shall cease and terminate."

The thirty-sixth section provides as follows : " Whenever any loan or loans are to be made, the member taking the same shall either pay or allow to be deducted the premium bid for the same." These provisions of the by-laws develop and make sufficiently apparent the plan or scheme upon which this association sought to accomplish its purpose. The ultimate object was the making of each share of stock worth $200. It was to the interest of every member, whether a borrower or not, that this object should be attained at the earliest period that it could be legally done in pursuance of the scheme adopted ; and each member bound himself to co-operate with his fellow-members in accomplishing it.

A loan for a sum less than $200, being the value of one share, or for a sum less than $200 on each share upon which loans were to be made, is nowhere provided for in the by-laws, and could not have been in the minds of the members at the time they adopted them.

The mode by which this association ascertained and estimated the value of its stock from time to time, is very clearly shown by the testimony of its secretary, set out in the bill of exceptions. He says : " The estimate of the valuation was made by adding together the amount of all the mortgages held by the association against the members, *including the premiums* therein, and adding to this any delinquent dues, and interest due from members, and cash on

hand, and dividing this aggregate by the number of shares held by all the members of the association, and the result was taken as the value of each share." We think that the scheme of this association could not have been carried out by adopting any other basis than the one thus indicated, and that it is in accordance with the provisions of the by-laws.

The section of the by-laws under which the plaintiff, as administrator in the courts below, sought to surrender the stock of his intestate and have the mortgage cancelled, reads as follows:

"Sec. 8. Upon the death of a shareholder who has not received a loan or loans, his or her heirs or legal representatives shall be entitled to continue to pay the monthly dues, and enjoy all the privileges as if he, she, or they had been original shareholders; or they shall be entitled to receive from the association the value of the stock of such decedent as the same was assessed at the annual meeting of the association immediately preceding his or her decease, first deducting his or her fines and arrearages, and portion of expenses and losses sustained, if such there be. Should the said deceased shareholder have received a loan or loans, his or her heirs or their representatives may return the same to the association, or continue to pay the interest and monthly dues, and become in all respects a member of this association until the same shall terminate."

It is under the latter clause of the section that the claim is made. It will be observed that there is an alternative offered to the heirs or legal representatives of decedents, either to return the "loan" to the association, or continue to pay interest and dues and to become, in all respects, members of the association until the same shall terminate. It must be presumed that these alternatives were intended to have substantially the same effect upon the rights of the parties, whichever might be chosen. The latter, if chosen, would require the performance of the decedent's contract according to its terms until the termination of the association, by which it would receive all the benefits of the con-

tract, which would be the payment of dues and interest the value of the stock, should be equal to $200 on each share on which the loan was taken. If the former should be chosen, it would seem to be a necessary implication that the "loan" to be returned, should be the equivalent of that which would result from carrying out the contract under the latter alternative, viz., two hundred dollars for each share of stock on which the loan was taken, and the equivalent could be ascertained in the manner indicated in the first clause of the section, and when the latter clause is read in connection with the first, this conclusion more clearly appears to be the true one; and when the entire section is read in connection with the scheme or plan upon which the objects of the association are to be wrought out and accomplished, there can be no doubt that the word "loan," as used in the latter clause of the section under consideration, must mean the amount of money received and the amount of premium inclusive, in other words, the sum of $200 per share for each share of stock upon which the loan was based. Any other construction would require a surrender, by the association, of the benefits of the contract by which the decedent had obligated himself to it. In the absence of language expressly requiring it, this can not be done. The district court erred in holding that the loan to be returned was the amount of money actually received by the decedent.

Motion granted; judgment reversed, and the cause remanded to the district court for further proceedings.