## USURY.

[Circuit Court of Cuyahoga County.]

THE BROOKLYN BUILDING & LOAN ASSOCIATION COMPANY v.
DAMAS DESNOYERS AND ALPHONSINE DESNOYERS.

Decided, June, 1904.

*Building Associations—Usury—The Paragraph Relating thereto in Section 3836 Constitutional—Corporation Laws.*

The third paragraph of Section 3836, Revised Statutes of Ohio, in so far as it exempts building and loan associations from the operation of the usury laws is not unconstitutional.

WINCH, J.; HALE, J., and MARVIN, J., concur.

This case was heard on appeal from the common pleas court. The petition prays for the foreclosure of a mortgage given to secure the payment of a loan made by plaintiff to defendant, Damas Desnoyers, certain covenants and agreements in said mortgage being as follows:

"The condition of this deed is such, That whereas the said Damas Desnoyers, being the owner of four and one-half shares of stock therein, has, together with Alphonsine Desnoyers, executed and delivered to the said The Brooklyn Building & Loan Association Company a certain written obligation of even date herewith for the sum of nine hundred dollars ($900), being the amount received by him as a loan upon said shares under the terms and conditions prescribed in the constitution and by-laws of said company, and has therein specially agreed to pay to said company for such loan, without demand, on the second Wednesday of each and every month, beginning with the eighth day of May, 1895, until the said loan shall be finally paid, in the manner provided in said constitution and by-laws, the following sums of money, to-wit:

"1st. Dues: The sum of four and fifty one-hundredths dollars ($4.50), being the monthly installment of dues on said shares.

"2d. Interest: The sum of four and fifty one-hundredths dollars ($4.50), being the interest on said sum of nine hundred dollars ($900), at six per cent. per annum, subject to annual

*This decision is in harmony with *Spies* v. *Loan & Trust Company*, 4 C. C.— N. S., 131; *Mykranz* v. *Globe Building & Loan Association*, 19 C. C., 51, not followed.

rebatement according to the provisions of the constitution and by-laws of said company.

"3d.    Premiums: The sum of two and twenty-five one hundredths dollars ($2.25) per month, being the premium on said loan at three per cent. per annum.

"4th.    Fines: All fines, assessments and penalties which the said Damas Desnoyers shall incur, or which may be levied upon him as a member of said company and in accordance with its constitution and by-laws.

· "And it is further agreed that in case of default in making any of the payments stipulated for in the above obligation, when the same shall become due and payable, or to comply with the requirements of the constitution and by-laws of said company as aforesaid, then the amount secured by the within mortgage, with all arrearages, fines, premiums, or other charges thereon of whatever nature, shall become due and payable at once, or at any time thereafter, and whether there be subsequent defaults or not, all at the option of said company, and this mortgage may be foreclosed by due process of law."

An amended answer filed by the defendants alleges as a defense that prior to the bringing of this action plaintiff agreed to a settlement and liquidation of said loan upon the payment to it by the defendants of the balance due thereon computed as if the loan had originally been made to draw only six per cent. interest; that defendants had tendered to plaintiff the balance so computed and agreed upon, but plaintiff refused to accept it.

A reply denies that any agreement for settlement as alleged was ever made.

Upon the hearing no proof of any such settlement was made, but counsel for defendants contended that the contract sued on by plaintiff is usurious, and being usurious, that plaintiff is entitled to collect thereon only six per cent. interest, which defendants had tendered.

There is no question that the contract is an usurious one, but it must be enforced under the laws governing building and loan associations, unless said laws, so far as they authorize the collection of usurious interest', are invalid.

Thus the sole question for determination in this case is the constitutionality of the third paragraph of Section 3836 of the Revised Statutes, which reads as follows:

"Such corporations (building and loan associations) shall have power to assess and collect from members and depositors such dues, fines, interest and premium on loans made, or other assessments as may be provided for in the constitution and by-laws. Such dues, fines, premiums or other assessments shall not be deemed usury, although in excess of the legal rate of interest."

It appears that the Circuit Court of the Fifth Circuit, sitting in Ashland county, in the case of *Mykrantz* v. *Globe Building & Loan Association,* 19 C. C., 51, held that the Legislature, by exempting building and loan associations from the operation of the usury laws, had undertaken to grant "special privileges to a certain class of people and to a certain class of corporations" in contravention of Sections 1 and 2 of the Bill of Rights, and that therefore said exemption is invalid.

The Circuit Court of the Sixth Circuit, sitting in Lucas county, in the case of *Spies* v. *Loan & Trust Company,* 4 C. C.— N. S., 131, held that the law is not a violation of said Sections 1 and 2 of the Bill of Rights.

There is no decision of the Supreme Court directly in point, but the right of building and loan associations to collect usurious interest has been recognized and enforced by the Supreme Court repeatedly.

The first building and loan association act in this state was passed May 5, 1868 (65 O. L., 127), and amended three days later (65 O. L., 173). The original act as amended provided as follows:

"Section 2. Such corporation shall be authorized and empowered to levy, assess and collect from its members such sums of money, by rates of stated dues, fines, interest on loans advanced and premiums bid by members or depositors for the right of precedence in taking loans, as the corporation by its by-laws shall adopt; also, to acquire, hold, encumber and convey all such real estate and personal property as may be legitimately pledged to it on such loans, or may otherwise be transferred to it in the due course of its business; *provided,* that the dues, fines, and premiums so paid by members or depositors, although paid in addition to the legal rate of interest on loans taken by them, shall not be construed to make the loans so taken usurious; *and provided also,* that no person shall hold more than twenty shares in any such association, in his own right."

While this act was in force the case of *Lucas* v. *The Greenville Building & Savings Association,* 22 O. S., 339, was heard by the Supreme Court.

"This was an action by the association to recover of Lucas money which he had as a loan from it as a member of the company. Interest was reserved and paid upon this loan exceeding eight per cent. per annum, the maximum rate allowed by the general law, but not exceeding the limits allowed by the statute under which the company was organized. This matter of alleged usury was set up as a defense, to the extent of the excess of interest paid over six per cent."

The court held:

"The interest reserved was no more than the law allowed."

In the case of *Ohio, ex rel,* v. *Greenville Building, etc., Association,* 29 O. S., 92, the court recognized the right of the association to charge a premium in addition to the legal rate of interest, but held that "the only mode by which the premium on a loan can be fixed is by the bidding of the members or depositors for the right of precedence."

In the case of *Licking Co. S. L. & B. Association* v. *Bebout's Admr.,* 29 O. S., 254, it appears that one Bebout had received from the association the sum of $410, bidding $390 premium for precedence in taking the loan and had given the association a mortgage to secure the payment to it of the full sum of $800. He made payment of monthly installments of dues and interest for some time and then died. His administrator elected to return the $410, and tendered the amount, less amounts previously paid in dues and interest, but the association refused to accept it. Thereupon the administrator commenced suit to cancel the mortgage, the common pleas court ruled in his favor and the district court did the same. Judge Gilmore, in deciding the case, said: "If the loan in this case consisted of the cash received on taking it, which was $410, exclusive of the premium bid for precedence, which was $390, the decree of the district court was correct, and must be affirmed. If, on the other hand, the loan consisted of the aggregate of these sums, *i. e.,* $800, the decree was erroneous and must be reversed." The decree was reversed.

In the case of *Bates* v. *People's Savings & Loan Co.,* 42 O. S., 655, the court defined the premium which should not be con-

strued to make the loan usurious as one bid by a member or depositor for the right of precedence in taking a loan, at a competitive sale of such right. This case was decided in 1885, and the following year the law was amended by leaving out the requirement that the premium must be bid, leaving it to the association to provide in its constitution and by-laws regarding the payment of premiums (83 O. L., 116). Again, in 1891, the law was amended and the provision now known as Section 3833-3 and heretofore quoted, was adopted (88 O. L., 462). In the present law such associations are authorized to charge such dues, fines, interest and *premiums* on loans made or other assessments, as may be provided for in the constitution and by-laws. Since the passage of this act, the powers of such corporations and the rights and liabilities of their members thereunder, have been reviewed by the Supreme Court, and the following quotations are from an opinion by Chief-Justice Minshall in the case of *Eversmann, Receiver,* v. *Schmitt,* 53 O. S., 174, decided in 1895:

"Mutuality is the essential principle of a building association. Its business is confined to its own members; its object being to raise a fund to be loaned among themselves, or such as may desire to avail themselves of the privilege. This is done by the payment, at stated times, of small sums, in the way of dues, interest on loans and premiums for loans. Each shareholder, whether a borrower or non-borrower, participates alike in the earnings of the association, and alike assists in bearing the burthen of losses sustained.

"The borrower before his stock is paid up, receives from the association the par value of his shares, in the nature of an advance loan. For this, he agrees to pay the premium, if any, for the privilege, the interest on the money advanced, subject to abatements to be made at stated times, and the dues on his stock until it matures. In other words, he agrees to keep up and pay out his stock, as if he were a non-borrower, in consideration of the amount being advanced to him before that time. Hence, the borrower remains a stockholder, and participates in all the privileges and benefits of a stockholder; has a voice in the management of the association and participates in its earnings. The latter go toward discharging his obligations arising on the loan, and to shorten the time in which he will be fully discharged therefrom. For, taking all losses into account, whenever the shares of the borrower have reached their par value by the pay-

ment of dues and the apportionment of earnings, the loan is liquidated and he ceases to be a member, as he would, if he had not borrowed at all. In other words, with his shares paid up, he discharges his obligations as a borrower. And the exact test of his right to call for a cancellation of the mortgage given to secure his obligations as a borrower, is the inquiry whether he would have been entitled to receive from the association the par value of the shares on which the loan was made had he not become a borrower.

"In this case Mrs. Schmitt subscribed for twelve shares, and received from the association their par value, $3,000, as an advanced loan, at a premium of $240. She paid the premium, and agreed to pay the dues thereon, $6 per week, and interest at the rate of six per cent., subject to the annual abatement, 'until such time as the weekly dues paid and dividends declared and unpaid shall amount to the sum of three thousand dollars,' and all 'assessments' that might be levied upon her as a member of the association.    *    *    *

"It is wholly unlike a savings society where the borrower is not a member or otherwise interested in its business. Having no voice in the management, nor interest in the earnings of the society, the borrower and it sustain the simple relation of debtor and creditor. Here, as shown, the borrower is also interested as a creditor. The loan is for no definite period of time. It depends upon the management of the association, in which he continues as a member and has a voice."    *    *    *

In that case, the court held the defendant to the payment not only of dues, interest and premiums on her loan, but required her to pay in addition thereto an assessment of nearly $1,000 made by a receiver of the association after its insolvency, as her share of the losses of the association.

From the foregoing authorities it appears that the very question here involved, to-wit, the constitutionality of the law authorizing building and loan associations to charge premiums in addition to the legal rate of interest, has been many times incidentally, if not directly, before the Supreme Court, and yet the law has stood upon the statute books of this state and been enforced for more than thirty-six years. Indeed, some of the reported cases were in the nature of *quo warranto* cases in which the associations pleaded the statute as their warrant for charging premiums, and the Supreme Court refused to oust them from such franchise, though it saw fit to regulate them in its exercise to conform to the strict letter of the law.

Believing the decisions of this state recognize the validity of the law, we have deemed it unnecessary to consider the many authorities cited to us from other states in which the constitutionality of similar statutes has been sustained.

It may be remarked that our usury laws are statutory. Their application may be extended or limited at the pleasure of the Legislature. In recent years many of the states have repealed all laws regulating the rate of interest which may be contracted for.

In the Mykrantz case, the able judge delivering the opinion concedes that the statute here in question does not violate Section 26, Article II of the Constitution, which requires that all laws of a general nature shall be uniform in operation throughout the state, nor Article XIII, which prohibits special acts granting corporate powers. He says:

"This law, whatever else may be said about it, is a law of a general nature and is uniform throughout the state. It applies to all building and loan associations in whatever corner of the state they may be found. It is not granting, as we view it, a special or corporate power by special act of Legislature." 19 C. C., 56.

But he says it "gives special privileges to a certain class of people and to a certain class of corporations." That is true of all corporation laws—they grant special privileges to classes of corporations by which the classes of people who are members thereof benefit.

Railroad corporations enjoy the right to condemn private property; this is a special privilege enjoyed by no individual; and so the special privileges enjoyed by corporations and their stockholders might be enumerated at great length. We are not in harmony with the conclusion reached in the Mykrantz case, and therefore affirm the constitutionality of the law.

Decree for plaintiff.

*Smith & Taft,* for plaintiff.

*Thos. Robison,* for defendants.