Price, J.
The amount in controversy between the parties is $499.22 — the difference between the judgment of the court of common pleas and that of the circuit court. This amount the plaintiff in error claims is all usury and should not be charged against him.
The Southern Ohio Loan & Trust Company is an Ohio corporation, organized under the provisions of section 3836-1, et seq., Revised Statutes of Ohio. That section provides: “A corporation for the purpose of raising money to be loaned among its members shall be known in this act as a building and loan association. Associations organized under the laws of this state shall be known in this act as ‘domestic’ associations, and those organized under the laws of other states or territories, as ‘foreign’ associations. Associations may be organized and conducted under the general laws of Ohio relating to corporations, except as otherwise provided in this act.”
While this company did not adopt a name directly indicating that it became and is a building and loan association, it organized as such and announced its purposes in the second article of the constitution as follows: “The Southern Ohio Loan & Trust Comr *403 pany is a corporation organized for the purpose of raising money to he loaned among its members to aid them in the purchase and building of homes, and to provide the advantages usually expected from savings banks and other similar institutions. ’ ’ This article embraces in terms the definition of a building and loan association found in the above section of the statute. The name of the corporation so organized is not material, if it has the purposes and characteristics named in the statute and in its own constitution. This requirement seems to have been fully met, for we find it further provided in the same article: ‘All stock is paid for in cash, or in monthly installments, as provided for by the by-laws of this company.
“Whenever the amount of dues paid and dividends credited on any share shall equal the face value of said share, it shall be fully paid in and be considered to have fully matured, at which time it is subject to withdrawal, etc.”
Again from same article: “Annually on the first business day of January, so much of the earnings as may be necessary shall be set .aside to pay the current expenses of the company and the interest on deposits ; so much as shall be decided by the hoard of directors shall be reserved for the payment of contingent losses, and the residue shall be transferred as a dividend and credited to the shares of stock in force in proportion to their average monthly balances. * # *.”
Article ten of the by-laws provides that the funds of the company shall be loaned only to members on real estate security, and further, that the borrower, “shall in all cases receive the full amount applied for, for which he shall pay five per cent interest, and *404 "bid five per cent premium per annum. Interest and premium must be paid in monthly installments, and .accompany the dues to the home office.”
The same article provides, that if a member neglects to make his payments according to the terms of Tiis mortgage and application, he shall be liable to an action at law for their recovery besides the principal, all dues, interest, premiums, cost of insurance, taxes, fines due and owing the company (association).
We have referred to so much of the constitution and by-laws of this association as seems necessary lo show that its organization and operation are ■clearly within the scope of section. 3861-1, supra. The clause in article 2 of the constitution of the corporation — “and to provide the advantages usually expected from savings banks and other similar institutions,” is not involved in this case. It is not assumed by it that general banking powers will be exercised, and in the present case it is apparent that such powers were not exercised. Dearborn v. Northwestern Savings Bank, 42 Ohio St., 617.
Therefore, we find, as did the lower court, that the •defendant in error, plaintiff in the foreclosure action, was and is a domestic building and loan association, •organized and empowered under the laws of Ohio as described and defined by the act of the legislature above named.
The plaintiff in error desired to borrow $1,700, and in order to obtain a loan of that sum, subscribed for seventeen shares of the stock in the association, and. thereby became one of its members. He signed a written application for the loan to the full par value of the shares, and according to the requirements of the association, found in its constitution and by-laws, he executed and delivered to it a mortgage on real *405 estate described in tbe petition; and as further security. transferred back to the association the seventeen shares of stock. The constitution and by-laws were made part of the covenants and stipulations of the application and mortgage.
The condition of the mortgage now involved obligates Cramer to pay, (1) the sum of $8.50 per month, being the monthly dues on the seventeen shares of stock, to be credited as provided in the constitution and by-laws; (2) the interest due on $1,700 or money so advanced, payable monthly as specified in the same instruments; (3) the premium bid on said $1,700, or money so advanced, as specified in said constitution and by-laws; (4) all fines, penalties and other charges which said Cramer shall incur as a member of the association; (5) all rents, taxes, assessments, costs of insurance and other charges upon said premises in accordance with the constitution and by-laws.
"When we turn to the by-laws for the rates of interest and premium, we find the interest charged to be five per cent and the premium fixed at five per cent. The court below found, as we do, that the premium was not ascertained by competitive bidding, or, as sometimes called, at auction in open meeting of the members, and on that account it is claimed that the association determined an arbitrary or level' premium, which renders the contract usurious, when, such premium and interest are added together.
Here, it becomes necessary to examine the legislation of this state upon the authority committed to* such associations, and we find their first statutory' authority in the act of February 21, 1867 (64 O. L., 18). It authorized any number of persons not less: than five, to associate themselves together and be *406 come a corporation * * * ‘for the purpose of raising moneys to he loaned among its members for use in buying lots or houses, or in building or repairing houses, and such corporation shall be authorized and empowered to levy, assess and collect from its members such sums of money by rates of stated dues, fines, interest on loans advanced, and premiums bid by members for the right of precedence in taking loans as the corporation by its by-laws shall adopt. * * * Provided, that the dues, fines and premiums so paid, * * * although paid in addition to the legal rate of interest on loans taken by them, shall not be construed to make the loans so taken usurious, # # # 7
The act was amended in some respects May 5, 1868, and again May 9, 1868, but the feature of a competitive bidding was retained. Under these statutes, we have the cases of State ex rel. v. The Greenville Building & Saving Association, 29 Ohio St., 92; The State ex rel. v. The Oberlin Building & Loan Association, 35 Ohio St., 258; and Bates v. People’s Savings & Loan Association et al., 42 Ohio St., 655; and they decide, that under the statutes then in force, in order to save the premium from being obnoxious to our laws against usury, it must have been paid for precedence in obtaining the loan and at competitive bidding. Undergoing some changes subsequently, not important here, the statutes were re-cast in an act passed May 1, 1891 (88 O. L., 469), from which we have quoted in the earlier part of this opinion. Under the head of powers (section 3) it is now provided, “such corporation shall have power, * * * to assess and collect from members and depositors such dues, fines, interest and premium on loans made, or other assessments, as may be provided for in the *407 constitution and by-laws. Such dues, fines, premiums or other assessments shall not be deemed usury, although in excess .of- the legal rate of interest * * Section 3836-3, Eevised Statutes.
The statute now in force, and which was in operation when- the - mortgage in suit was executed, omits the former requirement, or rather condition of competitive bidding as to the premium to be paid, and therefore, if the statute is valid, usury cannot be asserted as tainting the loan in question.
The legislature, we must assume, had a reasonable motive for this material change, for before that time, this court, in the cases cited under the former law, held, that if the premium was not bid for precedence in obtaining the loan, it was usurious, in case it and the interest exceeded the legal rate to be charged under the interest laws. We think a reason for the change in the statute may be readily found. Experience with competitive bidding did not tend to fairness-and equality among the members. The amounts -of premiums bidden at different times and by different borrowers were not uniform. At one time competition was stronger than at another, thus increasing the sum to be paid. There was opportunity at least for fictitious competition to run the premium .up. And whatever the premium, high or low, the dividends were the same to all. The member who paid a high rate of premium received no greater dividend than the one who paid the lowest.
There was no certain standard and the rights of members thus varied with the seasons, or the financial stress in which the borrower might be found. The old law defeated the principle of mutuality .which is the basic principle of such associations. *408 Now, all borrowers are treated as upon a common level, and the premium is uniform and all fare alike in that respect, and of course share alike in the dividends to be credited. Therefore the present law is not-vicious, as declared by one of our circuit courts-, but on the contrary it is fair and is sanctioned by the rule of mutuality.
We do not judge these associations by the operation and powers of banking institutions. A member of the former sustains a' relation of mutuality to each and all of the other members. If he becomes a borrower, he is at the same timé one of the lenders. In making a loan, it is not contemplated that the principal debt will be' repaid in bulk, but in installments of dues, interest, dividends and perhaps premiums. When these amount to the sum borrowed, the mortgage is cancelled, the stock returned to the borrower which he may hold free of liens, or he may withdraw from the association under its rules for that purpose. Therefore, the relation of debtor and creditor, it may be said, does not strictly exist.
In Licking County Saving, Loan & Building Association v. Bebout’s Admr., 29 Ohio St., 252-4, Gilmore, J., says: “The object of these associations, and the powers with which they are clothed, on becoming incorporated, are expressed in very general terms in the statute authorizing their incorporation. Each association, when incorporated, is left at liberty to adopt such a scheme or plan for-working out and accomplishing its object as the members of the association may, by its by-laws provide, and so long as these do not violate any of the provisions of the statute, nor transcend the powers granted, they will be binding and obligatory upon and between the members and the association.”-
*409 In Eversmann, Receiver, v. Schmitt, 53 Ohio St., 174, this court stated in the syllabus: “1. The members of a building association, whether borrowers or non-borrowers, have a mutual interest in its affairs; and, sharing alike in its earnings, must assist alike in bearing its burdens.
“2. A borrowing member is one who receives in advance the par value of his shares, and agrees in consideration of' such advance, to pay the weekly dues on the shares,, and the interest on the loan, until the dues paid and the dividend declared and not paid, are equal to the par value of his shares. He then ceases to be a member and is entitled to a cancellation of the mortgage given to secure the obligations arising from the loan.”
In the opinion, on page 184, Minshall, J., uses this language: “Unlike other corporations for profit, a share in a building association has, at the inception, only a nominal value. Its value is expected to increase by the lapse of time and the success of the association. It is contrary to the- purpose ■ and genius of a building association that a share in if should be paid up at the time of the subscription. This is done by the payment of small dues, and the crediting, at stated times, of the earnings in the way of dividends. When the aggregate dues with-the credited earnings equal the par value of the shares of stock, it is paid up, and the owner, for that share, ceases to be a stockholder. ’ ’
We deem these illustrations of the operation of such associations sufficient to show the subject of the legislation we are considering and that bidding a premium for preference in obtaining a loan, is not essential to avoid our statutes against usury. The *410 law no longer requires it in order to suspend those statutes.
Therefore, the claim of plaintiff in error, that he should pay no more than six per cent on his loan is not sustained.
But it is urged that if our present statute authorizes an arbitrary rate of premium without competitive bidding, and the usury laws are suspended from .operation on such associations, the statute is unconstitutional. This claim is urgently made, but in terms somewhat general and indefinite. It will now be- seen that the foregoing discussion of the nature and characteristics of building and loan associations has an added value; and at the outset of what we shall say, we suggest the difficulty of perceiving what the matter of bidding a premium for preference in obtaining a loan, has to do with the constitutional question. Under the statutes in force prior to the present enactment, numerous cases came to this court involving a construction of the powers and operations of various building and loan associations. We have cited some of them. The constitutional validity of the former acts has never been seriously questioned in this court, and while other questions as to the powers and rights of said corporations were •thoroughly and ably argued by eminent counsel, it seems that it did not occur to any of them that the associations were proceeding under an invalid law. This suggestion is not conclusive of the question, but the incident is forcible at this day of the life of such institutions. And we are unable to see what the absence from the statute of the clause requiring competitive bidding of premiums, can add to the constitutional argument against the existing law. Its validity or invalidity does not play or turn on the *411 presence or absence of that clause. Tbe arguments made here could have been aimed as well at all the former legislation on the same subject.
But wherein is the law unconstitutional?
The counsel say the law violates section 26- of article 2, which requires that “all laws of a general nature, shall have a uniform operation throughout the state * * *.” But counsel fail to enlighten us upon this proposition, and it is not even suggested where the point of conflict exists. It cannot be disputed that the statute is general in its terms, and that its nature and objects are general, providing as it does for the organization and operation of corporations to be known as building and loan associations ; — those organized under the laws of this state to be known as “domestic” associations, and those organized under the laws of another state or territory, to be known as “foreign” associations. It is available in any county, city or village of the state, and beyond doubt it has uniform operation throughout the state. As said in State ex rel. v. Spellmire, 67 Ohio St., 86: “With us, uniform operation throughout the state'means universal operation as to territory; it fakes in the whole state. And as to persons and things, it means universal as to all persons and things in the same condition or category. When a. law is available in every part of the state as to all persons and things in the same condition or category, it is of uniform operation throughout the state.”
This clear statement of the rule disposes of this branch of the contention, as no one will gainsay that the law in question is available in- every part of the state.
■ However, it is is more seriously and confidently asserted, that the legislation confers special priv *412 ileges on these associations which tend to the creation of a privileged class of corporations, and therefore the statute conflicts with section 2 of article 1 of our constitution. It provides that “all political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted that may not be altered, revoked, or repealed by the general assembly.”
The seed of the evil, said to be inhibited by a part of this section, is supposed to consist of the following clause in section 3836-3, supra: “such dues, fines, premiums or other assessments shall not be deemed usury, although in excess of the legal rate of interest.” This statute applies peculiarly, and perhaps alone to building and loan associations, leaving other corporations and persons subject to the statutes against usury.
It is asserted that the legislation unlawfully discriminates in favor of these building and loan associations, and against all others, whereby all do not have the equal protection and benefit of our laws.
This question is not raised by the state, but by a member of the association, whose relation thereto we have already described; and his right to do so in this collateral manner, may well be doubted. He is. a part of the association and equally with the other members, amenable to the constitution and by-laws, adopted, all of which were incorporated in and became a part of his contract with the association.
However, we are not averse to a brief consideration of the point raised.
*413 The organization of building and loan associations being authorized under a general law, we find the limitations upon their powers and the grant of their authority in few and simple rules. The major part of the government of their internal affairs is placed within the hands of the associations themselves, and the mutual rights of the borrowing and non-borrowing stockholders are to be worked out according to their own regulations, of course being supervised by limitations set by the statute. The law creating these associations can confer upon them such reasonable and ample powers for their successful operation, as the general assembly may deem necessary, within the purposes and scope of their organization, and in doing this the legislature may classify the subjects upon which the powers are conferred and yet keep within constitutional limits.
As touching the precise question under consideration, we have no adjudication of this court; but similar provisions to ours are found in the constitutions of nearly all of the states of the union, and we avail ourselves of some of the decisions of other states, where the present question was considered.
In Iowa Savings & Loan Association v. Heidt, 43 L. R. A., 689 (Iowa), it is held that, “Statutes exempting building and loan associations from the operation of the usury laws are not unconstitutional.” On page 692, in the opinion of the court, by Waterman, J., it is said: “First it is said that the building and loan law of the state is unconstitutional, because it is class legislation. Some of the arguments advanced in support of this claim assail rather the policy of such statutes than the power to enact them. In theory, these institutions are profit-sharing. The amounts directly paid for the use of *414 money, go indirectly to the benefit of the stockholders, through the increase in the value of their shares.' "Where the loans are confined to shareholders, we can see good reason for exempting such associations from the operation of the usury laws. That the constitutional power exists to so make the exemption, we think is without serious doubt.”
In Zenith B. & L. Association v. Heimbach et al., 79 N. W. Rep., (Minn.), 609-11, the supreme court of that state say: “It has been assumed by this-court in several cases, that the provisions of the statute exempting building associations from the operation of our usury laws were constitutional, but the question was not directly raised or decided. In this case the defendant urges that such statutes are class legislation, and therefore unconstitutional. The operation of building and loan associations proper, when they adhere to the basic principles of their organization, differ so radically from ordinary loan-transactions as to afford a proper basis for classification, and to justify the legislature in making a separate class of them; hence a statutory exemption of them from the operation of usury laws is constitutional. This proposition is sustained on principle and the great weight of authority, and we hold the statutes here in question constitutional. ’ ’
In November, 1899, the supreme court of Indiana, in the case of International B. & L. Association No. 2 v. Wall et al., 55 N. E. Rep., 431, held that: “The act of 1875, authorizing building associations, when loanable funds are on hand, to make loans to that member who shall take the same upon the terms most favorable to the company, and declaring that premiums, fines and interest on premiums should not be deemed usurious, does not contravene constitution, *415 article 1, section 23, and article 4, section 22, which-prohibit the granting of special privileges and the passage of special laws relating to interest, since, under the essential nature of the contract, the member stands in the dual relationship of lender and borrower. ’ ’
The same court in the month preceding, in Security Savings & Loan Association v. Elbert et al., 54 N. E. Rep., 753, made a similar holding from which we need not quote.
In Archer v. Baltimore B. & L. Association, 30 S. E. Rep., 241, the supreme court of appeals of West Virginia held: “2. Building associations are authorized to adopt by-laws fixing a minimum premium at which to award loans to their members, such premiums ‘to be- deducted from the loans in advance, or paid in periodical installments.
. “3. Section 26 C. 54 code, in so far as it exempts building associations from the operation of the general law in relation to usury, is not unconstitutional. ’ ’ The opinion of the court in that case is a valuable contribution to the law of such associations.
We cite as bearing upon both provisions of our constitution said to have been violated in this case, Vermont Loan and Trust Co. v. Whithed, 2 N. D., 83. The case is a thorough discussion of each of the* grounds contended for by the plaintiff in error, and is in harmony with the other cases from which we have quoted.
In Peoples B. & L. Association v. Billing et al., 104 Mich., 186-191, the supreme court of Michigan say: “It is contended that the statute authorizing the formation -of building and loan associations is class legislation and unconstitutional. This contention is not supported by the authorities. On the *416 contrary, such legislation has been upheld in a number of the states, while we have found but a single authority sustaining the contention of defendant’s counsel, — the case of Association v. Johnson, 88 Ky., 191. We think the reasoning of the authorities which sustain the constitutionality of such statutes is in. accord with sound principle and the previous holdings of this court. As was said in Holmes v. Smythe, 100 Ill., 413: “The statute under which the association was organized is a general law, applicable to all the citizens of the state who choose to bring themselves within the relations and circumstances provided for by it.”
Each of the above cases cites others for its support, until the array of authority is almost unbroken and truly formidable. Most -of them are modern decisions, and made in the light of rapidly increasing financial business and needs of our people. We are fully satisfied that our statute which is assailed in this case contravenes no provision of our constitution.
The judgment of the circuit court is affirmed.

Judgment affirmed.

Davis, C. J., Shauck, Crew, Summers and Spear, JJ.. concur.